No. 42,381

HUBERT HALE and DELORES HALE, *Appellants,* v. OPAL A. MANION and ROBERT MANION, d/b/a EL DORADO CAB COMPANY, and ALVIN SCHIESSER, *Appellees,* and WILLIAM E. BRIGHT, *Defendant.*

(368 P. 2d 1)

Opinion filed January 20, 1962.

*Ervin E. Grant,* of El Dorado, argued the cause, and *E. W. Grant,* of El Dorado, and *C. C. Whittaker, Jr.,* of Eureka, were with him on the brief for the appellants.

*Richard C. Hite,* of Wichita, argued the cause, and *M. F. Litras,* of El Dorado, and *W. A. Kahrs, Robert H. Nelson* and *H. W. Fanning,* all of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: The question in this case is whether the parents of a child who dies prior to birth as the result of another's negligence have a cause of action under the wrongful-death statute.

The trial court held they do not and plaintiff parents have appealed.

A brief summary of the amended petition follows:

For several months prior to February 29, 1960, plaintiff mother

was pregnant and had been receiving prenatal care and treatment from her physician. On that date she was a fare-paying passenger in a taxicab owned by defendant cab company and being driven by defendant Schiesser. The cab was involved in a collision with a vehicle owned and operated by defendant Bright, and as a result thereof she sustained injuries. That evening she commenced to discharge blood and telephoned her physician. He prescribed certain medicines and bed-rest for three days. Several days later, on March 6, she experienced severe cramps and that evening, at the direction of her physician, was admitted to a hospital. At that time she was informed and believed that her pregnancy was intact, but early in the morning on March 7 severe cramping again occurred and she "was thereupon delivered of a perfectly formed male child, which did not survive birth." The impact of the collision of February 29 caused the disruption of the placenta or afterbirth and was responsible for the inability of the placenta to retain its maternal attachment and caused the death of her child.

Allegations concerning the alleged acts of negligence on the part of defendants need not be noted.

Separate demurrers to the amended petition by the three defendants on the ground that pleading failed to state facts sufficient to constitute a cause of action were sustained—whereupon plaintiff parents have appealed.

By stipulation of the parties the appeal has been dismissed as to defendant Bright.

Our wrongful-death statute (G. S. 1959 Supp. 60-3203) provides that when the death of one is caused by the wrongful act or omission of another, an action therefor may be maintained against the wrongdoer if the deceased—had he lived—might have maintained an action against such wrongdoer for an injury for the same act or omission.

The statute makes it clear that the right of action created exists only in cases wherein the injured person could himself have maintained an action for damages, had he lived. It is clear, therefore, that plaintiff parents can maintain no action for damages on account of the death of the child unless the child, had he lived, could have maintained an action against defendants for the injury inflicted upon him before his birth—that is to say, unless the child, had he lived, could have maintained an action for his prenatal injuries.

Inherent, therefore, in the precise question presented here—that is, whether the parents may recover for the death of their stillborn child—is the further question whether the child, had he been born alive, could have maintained an action for prenatal injuries.

Although the question of the right of a child to recover for its prenatal injuries has not been decided by this court, the matter has been passed upon in a number of states as is shown by the annotations found at 10 A. L. R. 2d 1059 and 27 A. L. R. 2d 1256. One of the leading cases on the subject appears to be *Williams v. Transit, Inc.*, 152 Ohio St. 114, 87 N. E. 2d 334, 10 A. L. R. 2d 1051 (1949), in which it was held that an unborn viable child injured by another's negligence may, after birth, maintain an action for such injury. The rationale of the decisions supporting the right of a child to maintain an action for its prenatal injuries appears to be that an unborn *viable* child is capable of independent existence and hence should be regarded as a separate entity, and to deny it such right would bring about extremely harsh results.

On the second proposition—and which also is new in this state, that is, whether, under wrongful-death statutes similar to ours, parents can maintain an action for the death of their stillborn child allegedly caused by the negligence of another—the courts of other jurisdictions are divided, as is shown by the annotation on the subject appearing at 10 A. L. R. 2d 639, following the reported case of *Verkennes v. Corniea,* 229 Minn. 365, 38 N. W. 2d 838, 10 A. L. R. 2d 634 (1949).

In the Verkennes case, which was an action against the attending physician and a hospital, it was alleged that at the time the mother entered the hospital her unborn child was still alive and that such child, in the exercise of reasonable and prudent care on the part of defendants would have been born alive a normal and healthy child; that by reason of the failure of defendants to properly attend her the child died, and that their negligence caused the death of the undelivered child. The supreme court of Minnesota held that the action could be maintained under a wrongful-death statute substantially identical to ours.

In passing, it should be noted that since the Verkennes case was decided in 1949 the trend, as shown by the A. L. R. 2d Blue Book Supplement Service, has been to allow recovery under wrongful-death statutes for the death of a stillborn child allegedly caused by the negligence of another.

Our sister state of Nebraska has held otherwise in *Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N. W. 2d 229 (1951). In that case it was alleged that a bottle of gas exploded on July 2, 1948, on which date the mother was approximately eight months pregnant; that her unborn child was viable and capable of separate and independent existence, and that three days later her child was born dead as a result of negligence on the part of defendant in that the container of bottled gas was defectively bottled. In the course of the opinion reference was made to the Williams case, above, relating to the right of a child to maintain an action for prenatal injuries, and to the Verkennes case, above, relating to the right to maintain an action for wrongful death of a stillborn child. The Nebraska court, however, adhered to the rule that an unborn child is a part of the mother until birth and, as such, has no juridical existence, and that since no cause of action accrued to the child born dead, for injuries received before birth, none survived to the personal representative under the wrongful-death statute. The opinion closes with the statement that an action for wrongful death, under the circumstances, may not be maintained unless and until the right to bring it is afforded by legislative enactment.

In *Howell v. Rushing* (Okla.), 261 P. 2d 217 (1953), the supreme court of Oklahoma was confronted with the identical question. The opinion notes that the plaintiffs relied upon the rule announced in the Verkennes case from Minnesota, above, whereas the defendant relied on the rule as applied in the Drabbels case from Nebraska, above. The court followed the Nebraska rule and denied recovery.

Much could be written on the question involved in this case. On the other hand, decisions from other jurisdictions are collected and discussed in the A. L. R. 2d annotations above referred to, and we therefore believe that no occasion exists for an extended opinion. The interested reader is referred to those annotations, and also to 16 Am. Jur., Death, § 75, p. 56, *et seq.*, and 1961 Cumulative Supplement thereto, and to the case note on the subject at 9 Kan. L. Rev. 343.

For purposes of the demurrers the statements of the amended petition are to be taken as true. It would appear that inherent in the allegation that seven days after the collision plaintiff mother "was thereupon delivered of a perfectly formed male child, which did not survive birth" is the fact that on the date of the alleged negligent act the child was in a *viable* state. With full recognition

of the fact there are decisions from other jurisdictions to the contrary, we nevertheless adhere to those cases which hold that under facts and circumstances similar to those here presented—an action for wrongful death may be maintained.

The orders sustaining the demurrers to the amended petition are therefore reversed.

Price, J., dissenting: The result of this decision is to hold that a child born alive may maintain an action for prenatal injuries. The further result is that an action may be maintained for the wrongful death of a viable unborn child. Neither of these causes of action existed under the common law. The right to maintain an action for the wrongful death of a living person did not exist in this state until the enactment of our wrongful-death statute—and it is silent on the question whether an action may be maintained for the wrongful death of a child born dead.

I frankly concede that in a given case common simple justice dictates that parents should be allowed to maintain such an action— but it is my opinion that if such a cause of action is to be created in this state it should be by legislative enactment and not by this court.

Parker, C. J., concurs in the foregoing dissenting opinion.