KWATERSKI and another, Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Respondents.

*January 11—February 8, 1967.*

For the appellants there was a brief and oral argument by *Edward P. Rudolph* of Milwaukee.

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

WILKIE, J. The narrow issue presented on this appeal is whether an eighth-month, viable unborn child, whose later stillbirth is caused by the wrongful act of another, is "a person" within the meaning of sec. 331.03, Stats. 1963, so as to give rise to a wrongful-death action by the parents of the stillborn infant.

The wrongful-death statute provides that:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect

or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, . . . would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state." [1]

An examination of the Wisconsin law of prenatal injuries must begin with *Lipps v. Milwaukee Electric Railway & Light Co.*,[2] in which case this court rejected a cause of action by a nonviable infant who received prenatal injuries. In *Lipps* this court said that a nonviable child could not exist separate from its mother and thus could not be an independent person to whom separate rights could accrue. At that time this court refused to give much value to the recognition of the nonviable infant as a separate entity in the criminal law, in property law, and in medical and scientific texts.[3]

The right of recovery for prenatal injuries was again raised in *Puhl v. Milwaukee Automobile Ins. Co.*[4] In *Puhl* the plaintiff mother was twelve weeks pregnant when she was involved in an automobile accident. Subsequently she gave birth to her child, who was a

[1] Sec. 331.03, Stats. 1963, renumbered sec. 895.03, ch. 66, Laws of 1965.

[2] (1916), 164 Wis. 272, 159 N. W. 916.

[3] Id. at page 276: "The fact that the criminal law protects non-viable infants does not affect the question of their civil rights. The criminal law rests upon grounds of public policy and affects the public; the law of torts relates solely to the rights of private parties. So, too, the fact that for purposes of inheritance, taking under a will, etc., the existence of unborn children as recognized in law has no particular bearing upon the question of their right to recover for injuries sustained before birth. Neither does the medical or scientific recognition of the separate entity of an unborn child aid in determining its legal rights. The law cannot always be scientific or technically correct. It must often content itself with being merely practical."

[4] (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163.

mongoloid. Suit was brought on behalf of the mongoloid child, claiming that her mongoloid condition was caused by the accident. The trial court, following *Lipps*, denied recovery because the infant was not viable when it received injuries. On appeal, this court denied recovery because there was not sufficient evidence that the accident had caused the infant's mongoloid condition.

Although this holding disposed of the case, the court went on, in a thorough opinion by Mr. Justice HALLOWS, to discuss the then state of the law of prenatal injuries. This discussion was prompted, in part, by the fact that in *Puhl* the trial court had erroneously founded its dismissal order on *Lipps*. In *Puhl* the court concluded that *Lipps* need not be overruled because the mongoloid condition of the infant in *Puhl* was found not to have been caused by her prenatal injury.

Nevertheless, in the court's general discussion in *Puhl* of the law of prenatal injuries to infants, we completely rejected the concept of the child as a part of the mother, stating:

*"The viability theory . . . fails to recognize the biological fact there is a living human being before viability.* A child is no more a part of its mother before it becomes viable than it is after viability. It would be more accurate to say that the fetus from conception lives within its mother rather than as a part of her." (Emphasis added.) [5]

The court gave two other reasons for denying the viability distinction. First, the court recognized analogies from the fields of criminal law and property law where the rights of unborn infants were protected. Second, the court said recovery was supported by moral grounds.

The court further stated:

". . . Under this theory [biological theory] an unborn infant is not treated as a legal person but as a separate

---

[5] Id. at page 356.

entity or human being in the biological sense from conception, having a potentiality of personality which is not realized until birth. Injuries suffered before birth impose a conditional liability on the tort-feasor. This liability becomes unconditional, or complete, upon the birth of the injured separate entity as a legal person. *If such personality is not achieved, there would be no liability because of no damage to a legal person."* (Emphasis added.) [6]

Respondents argue that by this language Wisconsin holds that a stillborn infant cannot recover under the wrongful-death statute. This is not so. In the above-quoted language in *Puhl* we were concerned only with making it clear that for an unborn infant who is injured during gestation to have a cause of action in his own name and right that infant must be born alive. We were not discussing whether such an infant, stillborn, would be a "person" under that statute.

We recognize that up to 1949 no American jurisdiction permitted wrongful-death proceedings for a stillborn infant. In that year, the Minnesota court first permitted such a suit in *Verkennes v. Corniea.*[7] Since the *Verkennes* opinion, ten jurisdictions have expressly permitted suits on facts precisely equivalent to the case at bar,[8]

---

[6] Ibid.

[7] (1949), 229 Minn. 365, 38 N. W. (2d) 838, 10 A. L. R. (2d) 634. This case involved a right of action against a physician whose negligence in delivering a child killed it while still in the womb of the mother. The case of statutory interpretation was easier because the Minnesota statute on wrongful death does not specifically refer to a person, providing as follows: "When death is caused by the wrongful act or omission of any person or corporation, the personal representative of the decedent may maintain an action therefor if he might have maintained an action, had he lived, for an injury caused by the same act or omission."

[8] *Gorke v. Le Clerc* (1962), 23 Conn. Supp. 256, 181 Atl. (2d) 448; *Worgan v. Greggo & Ferrara, Inc.* (1956), 50 Del. 258, 128 Atl. (2d) 557; *Hale v. Manion* (1962), 189 Kan. 143, 368 Pac. (2d) 1; *Mitchell v. Couch* (Ky. 1955), 285 S. W. (2d) 901; *Valence v. Louisiana Power & Light Co.* (La. App. 1951), 50 So. (2d) 847;

and two others have indicated that such suits would be permitted.[9] Equally important, four federal courts have sustained such suits although the substantive state law these courts were applying had not directly resolved the issue.[10] In all of these cases, the infant child was viable at the time of the accident which caused it to be stillborn, and the rule of these cases has therefore been limited to a situation involving a viable child.

Thus, the weight of authority continues the trend noticed in *Puhl,* favoring recognition of an unborn child as a person for purposes of recovery under a wrongful-death statute. There are at least four basic reasons which support recovery.

(1) A viable child is capable of independent existence and therefore should be recognized as a separate entity entitled to the protection of the law of torts. In *Puhl* we have already recognized that an unborn child is a separate legal entity.

(2) As stated in *Puhl,* the law recognizes an unborn child by protecting its property rights and rights of inheritance and also protects the unborn child against the crimes of others.

---

*State v. Sherman* (1964), 234 Md. 179, 198 Atl. (2d) 71; *Rainey v. Horn* (1954), 221 Miss. 269, 72 So. (2d) 434; *Poliquin v. Mac-Donald* (1957), 101 N. H. 104, 135 Atl. (2d) 249; *Stidam v. Ashmore* (1959), 109 Ohio App. 431, 11 Ohio Ops. (2d) 383, 167 N. E. (2d) 106; *Fowler v. Woodward* (S. C. 1964), 138 S. E. (2d) 42.

[9] *Porter v. Lassiter* (1955), 91 Ga. App. 712, 87 S. E. (2d) 100; *Amann v. Faidy* (1953), 415 Ill. 422, 114 N. E. (2d) 412.

[10] *Gullborg v. Rizzo* (3d Cir. 1964), 331 Fed. (2d) 557 (Pa. law); *Todd v. Sandidge Construction Co.* (4th Cir. 1964), 341 Fed. (2d) 75 (S. C. law); *Mace v. Jung* (D. C. Alaska 1962), 210 Fed. Supp. 706; *Wendt v. Lillo* (D. C. Iowa 1960), 182 Fed. Supp. 56. The importance of these cases is emphasized by the fact that the question was undecided under the state law and a federal court was required to make its own determination of what a state court would probably rule in a similar case. The *Gullborg Case* provides an excellent summary of the existing state of the law in American jurisdictions, although Pennsylvania later ruled to the contrary in *Carroll v. Skloff* (1964), 415 Pa. 47, 202 Atl. (2d) 9.

(3) If no right of action is allowed, there is a wrong inflicted for which there is no remedy. Denying a right of action for negligent acts which produce a still-birth leads to some very incongruous results. For example, a doctor or a midwife whose negligent acts in delivering a baby produced the baby's death would be legally immune from a lawsuit. However, if they badly injured the child they would be exposed to liability. Such a legal rule would produce the absurd result that an unborn child who was badly injured by the tortious acts of another, but who was born alive, could recover while an unborn child, who was more severely injured and died as the result of the tortious acts of another, could recover nothing.

(4) A family who loses a child before it is born suffers a very grievous loss for which money damages are really inadequate. It is only equitable that a family should receive some compensation from a tort-feasor whose negligence caused the loss of a child.

A smaller group of cases supports the denial of a recovery for a stillborn infant under the wrongful-death statutes of several states.[11] Essentially the courts deny recovery for the following reasons:

[11] *Norman v. Murphy* (1954), 124 Cal. App. (2d) 95, 268 Pac. (2d) 178; *Drabbels v. Skelly Oil Co.* (1951), 155 Neb. 17, 50 N. W. (2d) 229; *Graf v. Taggert* (1964), 43 N. J. 303, 204 Atl. (2d) 140; *In re Estate of Logan* (1956), 4 Misc. (2d) 283, 156 N. Y. Supp. (2d) 49; *Howell v. Rushing* (Okla. 1953), 261 Pac. (2d) 217; *Hogan v. McDaniel* (1958), 204 Tenn. 235, 319 S. W. (2d) 221; *Carroll v. Skloff, supra,* footnote 10. See also 10 A. L. R. (2d) 639, *et seq.* These cases in the A. L. R. annotation are not directly in point, however, since they did not involve an action for a wrongful death of an unborn child. Rather, in these cases the plaintiffs attempted to include such damages as part of the mothers' causes of action.

Many of the cases above are not applicable to the law in Wisconsin because denial of recovery is effected for reasons peculiar to the law of that state. New York and New Jersey both require pecuniary loss as an element of a wrongful-death action and do not per-

(1) *Precedent.* This reason no longer applies since the weight of decisions now favors recovery. Moreover, many of the decisions cite American Jurisprudence and Corpus Juris Secundum, but these authorities have since changed their position.[12]

(2) *A child has no juridical existence apart from its mother.* This is an assertion which has no scientific or medical basis in fact, and this theory was rejected by this court in *Puhl.*

(3) *Permitting such suits would open the door to fraudulent claims and proof of a causal connection would be overly speculative.* These objections do not go to the validity of the cause of action. As we said in *Puhl:*

". . . Adequate safeguards against fraudulent claims can be devised. Such claims are not unknown in the law. If the common law has any vitality, it has been argued that it should be elastic enough to adapt itself to current medical and scientific truths so as to function as an efficient rule of conduct in our modern, complex society."[13]

(4) *To sanction such a cause of action would create a new right which is a matter for the legislature.* But the legislatures enacted wrongful-death statutes to give some limited relief from a very illogical rule created by Lord Ellenborough.[14] As such they are remedial statutes and should be broadly construed to effect their purpose.

mit recovery for loss of society and companionship. These courts hold that any showing of pecuniary loss by loss of an unborn infant child is too speculative to be compensable. In California recovery is denied because of a statute which states "A child conceived but not yet born is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth."

[12] See 25A C. J. S., Death, pp. 625–627, sec. 26 (2).

[13] *Puhl v. Milwaukee Automobile Ins. Co., supra,* footnote 4, at page 357.

[14] Prosser, Law of Torts (3d ed.), p. 924, sec. 121.

The argument that the legislature never intended that such wrongful-death actions apply to stillborn infants is also not valid. This law was passed in 1857 and little was known at that time concerning the life of an infant in the womb.

(5) *Since the child is part of the mother, the wrong will be remedied if the mother sues and recovers for her injuries.* Yet we know of no court that has permitted a plaintiff mother to include injury to or death of a child as part of her injuries.

We are satisfied that, on the whole, the better reasoned cases appear to permit recovery for the wrongful death of a stillborn infant.[15] We conclude, therefore, that a viable infant who receives an injury and by reason thereof is stillborn is a "person" within the meaning of sec. 331.03, Stats. 1963 (now sec. 895.03, Stats.), so as to give rise to a wrongful-death action by the parents of the stillborn infant. We are not here concerned with a nonviable fetus and we, therefore, do not decide whether such a nonviable infant who receives an injury and is stillborn by reason thereof is such a person within the meaning of such section.

*By the Court.*—Order reversed.

---

[15] For an excellent discussion of the problem see Tufo, Recovery for Prenatal Torts: Actions for Wrongful Death, 15 Rutgers Law Review (1960), 61.