Audrey **PANAGOPOULOUS**, as Administratrix of the Estate of Judy Machelle Panagopoulous, Deceased, Plaintiff,

v.

George DeArnold **MARTIN** and Umberger Transport, Inc., a corporation, Defendants.

No. 1062.

United States District Court
S. D. West Virginia,
Bluefield Division.

Jan. 17, 1969.

W. Virgil Ross, Bluefield, W. Va., Wade H. Ballard, III, Peterstown, W. Va., for plaintiff.

Ben B. White, Jr., Princeton, W. Va., Joseph M. Sanders, Jr., Bluefield, W. Va., for defendants.

CHRISTIE, District Judge:

This case is presently before the Court on motion of the defendants for dismissal of the claim for damages for wrongful death of Judy Machelle Panagopoulous, a stillborn child, brought by Audrey Panagopoulous, her mother, as administratrix of her estate. Defendants assert that this action, insofar as damages are claimed for the wrongful death of the stillborn child, should be dismissed for failure of the complaint to state a cause of action under West Virginia law. Our jurisdiction is based upon allegation of diversity of citizenship of the parties and requisite amount in controversy. Thus West Virginia substantive law is to be applied. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

### FACTS OF THE CASE

Assuming, for the purposes of the motion to dismiss, the truthfulness of the assertions found in the complaint, plaintiff's action for the wrongful death of her stillborn child is based upon the following facts:

On October 18, 1967, in Mercer County, West Virginia, a collision occurred between a motor vehicle owned by the defendant Umberger Transport, Inc., and operated by George D. Martin, one of its employees, and a motor vehicle operated by Zella Mae Denham, in which the plaintiff was a guest passenger. On the date of the collision, plaintiff was in the eighth month of her pregnancy and as a result of injuries received in the accident she was delivered, on that same

date, of a stillborn female child, Judy Machelle Panagopoulous. A physician examining plaintiff on the very day of, but shortly before, the accident had found the fetal heart audible, however, upon admission to the hospital following the accident the fetal heart tones were not heard. A subsequent autopsy indicated that death was caused by a cerebral hemorrhage.

■ The novel question presented for decision in this case is whether there is a right of action under the West Virginia Wrongful Death Statute by a personal representative of a stillborn child who dies as a proximate result of tortious injuries to her mother and herself while *en ventre sa mere* when the child was viable at the time of the injuries. Diligent research by counsel and the Court has failed to reveal any controlling decision by the West Virginia Supreme Court of Appeals on the question and, as a consequence, our duty becomes one of determining the rule that the highest court of West Virginia would probably follow if it were called upon to decide a similar case, rather than to attempt to independently fashion our own rule. Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mutual Life Insurance Company, 319 F.2d 469 (4th Cir. 1963). We embark upon this course conscious of the uncertainties inherent in such judicial prophesying, but mindful also of our obligation where jurisdiction exists to decide, not to avoid, the questions presented for decision.

## ACTIONS FOR WRONGFUL DEATH

■■ At common law, a cause of action ceased to exist at the death of the person injured, however, by statute, the several states have ameliorated this harsh rule of the common law by permitting the personal representative of the deceased party to maintain an action against the tortfeasor. Swope v. Keystone Coal & Coke Co., 78 W.Va. 517, 89 S.E. 284 (1916); Crab Orchard Improvement Co. v. Chesapeake & Ohio Ry. Co., 33 F.Supp. 580 (S.D.W.Va.1940).

Such remedial statutes, commonly referred to as the Wrongful Death Act, have followed two distinct theories in allowing recovery from a tortfeasor subsequent to the death of the person injured. Under one theory, known as the "survival theory," recovery is allowed on the basis of a loss sustained by the deceased's estate. Other statutes, including West Virginia's, have been patterned after an English statute known as the Lord Campbell's Act and contemplate the creation of an entirely new cause of action for wrongful death based upon the loss sustained by certain persons designated as the beneficiaries of the recovery rather than upon an injury suffered by the deceased's estate. Swope v. Keystone Coal & Coke Co., supra; Burgess v. Gilchrist, 123 W.Va. 727, 17 S.E.2d 804, 138 A.L.R. 676 (1941); Jackson v. Cockill, 149 W.Va. 78, 138 S.E.2d 710 (1964).

The statute which furnishes the authority to prosecute an action for damages for wrongful death in West Virginia (W.Va.Code, 55–7–5) provides, in part, as follows:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree or manslaughter. * * "

As can be seen from a reading of the statute, the right to bring an action for wrongful death is conditioned upon the death of a *person* caused by such wrongful act, neglect, or default of another as would have entitled the party injured, *if he had survived,* to maintain an action to recover damages against the tort-

feasor. It thus becomes our duty to determine whether, in the light of such statutory conditions, a cause of action would accrue upon the death of a child *en ventre sa mere* where such death was caused by the tortious conduct of a third party.

## RECOVERY OF DAMAGES FOR PRENATAL INJURIES

█ The statute makes it clear that a right of action for wrongful death exists only in cases in which the deceased person himself could have maintained an action for damages had he survived. Hoover's Adm'x. v. Chesapeake & Ohio Ry. Co., 46 W.Va. 268, 33 S.E. 224 (1899); Wright v. Davis, 132 W.Va. 722, 53 S.E.2d 335 (1949). But in the instant case, had the child survived the prenatal injuries and have been born alive, could she then recover damages from the tortfeasor for her injuries suffered while in her mother's womb? Such question, though related, is distinct from the problem of determining whether an action may be brought for damages for the wrongful death of a stillborn child by her personal representative.

In earlier years, the policy of the law with respect to the allowance or disallowance of a cause of action to a child for injuries sustained prior to its birth was influenced by a fear of fraudulent claims and speculative proof as to cause and effect, as well as an imperfect knowledge of medical science. Consequently, the earlier cases uniformly denied recovery for such damages. The earliest decision in a case of this nature and the one most often cited in later cases was rendered by a Massachusetts Court with Judge (later Justice) Holmes writing the opinion. Dietrich, Adm. v. Inhabitants of Northampton, 138 Mass. 14 (1884). The Court in this instance based its decision upon the view that the unborn child was a part of its mother who could thus recover for any damages to it that were not too remote to be recovered at all. While the view expressed by the Massachusetts Court in 1884 was followed for many years thereafter,[1] beginning in 1900 with a dissenting opinion by Judge Boggs in Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N.E. 638 (1900), a trend, which later became a stampede, in the direction of allowing recovery for prenatal injuries became discernible. In his dissenting opinion which has subsequently been received with great respect in the more recent opinions, Judge Boggs made the following remarks:

"The argument is that at the common law an unborn child was but a part of the mother, and had no existence or being which could be the subject-matter of injury distinct from the mother, and that an injury to it was but an injury to the mother; that in such case there was but one person —one life—that of the mother. A foetus in the womb of the mother may well be regarded as but a part of the bowels of the mother during a portion of the period of gestation; but if, while in the womb, it reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely and by artificial means from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother. Medical science and skill and experience have demonstrated that at a period of gestation in advance of the

---

1. Subsequent cases adopting the view of the Massachusetts Court expressed in the *Dietrich* case include the following: Stanford v. St. Louis-San Francisco Ry. Co., 214 Ala. 611, 108 So. 566 (1926); Newman v. City of Detroit, 281 Mich. 60, 274 N.W. 710 (1937); Buel v. United R. Co., 248 Mo. 126, 154 S.W. 71 (1913); Magnolia Coca Cola Bottling Co. v. Jordan, 78 S.W.2d 944 (Tex.Com. App., 1935); Mays v. Weingarten, 82 N.E.2d 421 (Ohio App., 1943); Drobner v. Peters, 232 N.Y. 220, 133 N.E. 567, 20 A.L.R. 1503 (1921).

period of parturition the foetus is capable of independent and separate life, and that though within the body of the mother it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and capable of maintaining life, when separated from the dead body of the mother. If at that period a child so advanced is injured in its limbs or members and is born into the living world suffering from the effects of the injury, is it not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child but wholly to the mother? * * *.

"The law should, it seems to me, be, that whenever a child in utero is so far advanced in a prenatal age as that, should parturition by natural or artificial means occur at such age, such child could and would live separable from the mother, and grow into the ordinary activities of life, and is afterwards born and becomes a living human being, such child has a right of action for any injuries wantonly or negligently inflicted upon his or her person at such age of viability, though then in the womb of the mother. That proposition having been established, that an adjustment of damages with the mother could not preclude the child would naturally and necessarily follow. * * *"

Later opinions adopting the position espoused by Judge Boggs in his dissenting

opinion in the *Allaire* case, supra,[2] add little to the cogency of the views therein expressed, and it need only be remarked at this point that, as opposed to the situation at an earlier date, no recent decisions have been found in which the right of a child to recover damages for prenatal injuries has been *denied*.[3]

In the only West Virginia case of any relevance with respect to the question of a cause of action for damages for prenatal injuries, Malone v. Monongahela Valley Traction Co., 104 W.Va. 417, 140 S.E. 340 (1927), the Court held erroneous an instruction given by the trial Court which could have been construed by the jury as allowing damages to the mother for the loss of a child *en ventre sa mere*, allegedly stillborn as a result of the negligence of a third party. However, a ruling that damages for the loss of a child *en ventre sa mere* are not recoverable in an action for personal injuries by its mother could hardly form the basis of a denial to an action for damages for prenatal injuries brought by the child itself. Indeed, as was pointed out by the Court in Steggall v. Morris, 363 Mo. 1224, 258 S.W.2d 577 (1953),

"(A) court of justice can hardly say to a mother that she cannot recover damages for injuries to the child because 'the child alone suffers damage on that account;' and then deny a cause of action by the child seeking damages by saying, 'as the unborn child was a part of the mother at the

---

2. A few cases have gone beyond the rule laid down in Judge Bogg's dissent, allowing recovery for prenatal injuries whether inflicted before or after the fetus became viable. See Hornbuckle v. Plantation Pipe Line Co., 212 Ga. 504, 93 S.E. 2d 727 (1956); Daley v. Meier, 33 Ill. App.2d 218, 178 N.E.2d 691 (1961); Bennett v. Hymers, 101 N.H. 483, 147 A.2d 108 (1958); Smith v. Brennan, 31 N.J. 353, 157 A.2d 497 (1964); Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93 (1960). In the present case the fetus was in the eighth month of gestation and a viable child capable of existence apart from its mother. Accordingly, it is not here necessary to decide whether the

West Virginia Court would permit recovery for injuries suffered prior to the time when the fetus became viable.

3. Among the decisions allowing recovery for prenatal injuries are the following: Bonbrest v. Kotz, 65 F.Supp. 138 (D.C. 1946); Williams v. Marion Rapid Transit, Inc., 152 Ohio St. 114, 87 N.E.2d 334, 10 A.L.R.2d 1051 (1949); Scott v. McPheeters, 33 Cal.App.2d 629, 92 P.2d 678 (1939); Woods v. Lancet, 303 N.Y. 349, 102 N.E.2d 691 (1951); Damasiewicz v. Gorsuch, 197 Md. 417, 79 A.2d 550 (1951); Shousha v. Matthews Driv-urself Service, Inc., 210 Tenn. 384, 358 S.W.2d 471 (1962); Hall v. Murphy, 236 S.C. 257, 113 S.E.2d 790 (1960).

time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her * * *.' "

■ In view of the decided trend in the recent opinions on the subject, as well as the fact that there is no precedent which presents an obstacle to such a course in the West Virginia decisions, it is our opinion that if the West Virginia Supreme Court of Appeals were to decide a case similar to the present case it would uphold a cause of action by a child seeking to recover damages for injuries suffered while in its mother's womb. In answering this question in the affirmative, one of the conditions precedent to bringing an action for wrongful death of a stillborn child is also satisfied, that is, that the wrongful act, neglect or default causing prenatal injury was such as would have entitled the unborn child, had he subsequently been born alive, "to maintain an action to recover damages in respect thereof * * *". W.Va.Code, 55–7–5. It remains to be seen whether the other conditions set forth in the Wrongful Death Statute are satisfied in the case of a stillborn child dying as a result of tortious injuries suffered while it remained in the mother's womb.

## RECOVERY OF DAMAGES FOR WRONGFUL DEATH OF STILLBORN CHILD

While it is, of course, true that a recognition of a right of action for prenatal injuries in a child subsequently *born alive* does not necessarily support the recognition of a cause of action for wrongful death of a stillborn child, nevertheless, the distinctions between these two types of actions should not be permitted to overshadow the impact of allowing the former type of action on the question of whether the latter type of action should be permitted. Thus, in permitting a cause of action for personal injuries inflicted prior to birth, the Courts have recognized not only the medical fact that a viable fetus is an individual capable of independent life apart from its mother, but also have accorded to the viable fetus the status of a distinct being capable of sustaining a legal wrong. Accordingly, in determining whether a cause of action for wrongful death should be permitted in the case of a stillborn infant, logic as well as common sense requires us to accord considerable weight to the fact that a cause of action is permitted for recovery of personal injuries inflicted while the child remained in the mother's womb. As was stated by the Connecticut Court in Gorke v. Le Clerc, 23 Conn.Sup. 256, 181 A.2d 448 (1962),

"Implicit in the principle that damages for non-fatal prenatal injuries to a viable fetus are recoverable is a recognition that there exists to such an unborn child a duty of care for the breach of which the wrongdoer may be held liable. Our statutes preserve and continue causes of action for 'injuries resulting in death,' and it logically follows under our survival statute that the personal representative of the child may prosecute the cause of action where the prenatal injuries result in death."

The cases denying recovery of damages for wrongful death in the case of a stillborn child have based their decisions upon (1) a determination that a child in its mother's womb is not a "person" as contemplated by the wrongful death statutes, (2) a determination that pecuniary loss could not be shown in such an action and damages would necessarily have to be based upon speculation, or (3) the construction given the peculiar wording of the Wrongful Death Act involved. These latter cases wherein recovery for wrongful death is limited to the death of a "person not being a minor," or a "minor person" are not controlling insofar as our decision is concerned since West Virginia's Wrongful Death Statute provides a remedy in the case of the death of a "person." W.Va. Code, 55–7–5. See Norman v. Murphy, 124 Cal.App.2d 95, 268 P.2d 178 (1954); Stokes v. Liberty Mutual Insurance Company, 202 So.2d 794 (Fla.App.1967).

■ With respect to the controversy as to whether or not a viable fetus is a "person" as contemplated by the wrongful death statutes, it is our opinion that recognition of an unborn child as a person entitled to protection from prenatal injuries, Allaire v. St. Luke's Hospital, supra, (dissenting opinion of Judge Boggs), necessarily requires a holding that such an unborn child is also a "person" when such a question is raised in the context of the wrongful death statute. Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E.2d 106 (1959). Such a conclusion appears not only technically correct in view of the fact that "biologically speaking" such a child is, in fact, a presently existing person, a living human being, Mitchell v. Couch, 285 S.W. 2d 901 (Kentucky, 1955), but it also has the appeal of consistency, a consideration which ought to carry some weight in the making of judicial decisions. Indeed, in denying recovery for the wrongful death of a stillborn child on other grounds, the New York Court, in Estate of Logan, 4 Misc.2d 283, 156 N.Y.S.2d 49 (1956), conceded that in that state a viable fetus was treated as a separate person *in esse* to whom a tortfeasor owed a duty of care. Other Courts, basing their denial upon grounds other than the question of whether or not a viable fetus was a person, have refused to hold that such a child was not a "person." See Gay v. Thompson, 266 N.C. 394, 146 S.E.2d 425, 15 A.L.R.3d 983 (1966); Graf v. Taggert, 43 N.J. 303, 204 A.2d 140 (1964). Having once recognized a viable fetus as an individual capable of independent life apart from its mother and having accorded to such individual the status of a distinct being capable of sustaining a legal wrong, we find no difficulty in holding that such a child is a "person" within the intendment of West Virginia's Wrongful Death Statute. In our opinion the West Virginia Supreme Court of Appeals, recognizing as it has that the Wrongful Death Act is "remedial, and should be construed liberally," Richards v. Riverside Ironworks, 56 W.Va. 510, 49 S.E. 437 (1904), would likewise have no difficulty in making such a finding.

## MEASURE OF DAMAGES

■■ The only remaining issue relates to the question of whether or not the problem of ascertaining damages creates an insurmountable barrier to the prosecution of an action for the wrongful death of a stillborn child. The Courts in Gay v. Thompson, supra; Graf v. Taggert, supra, and Estate of Logan, supra, where damages for wrongful death were variously limited to "pecuniary injury," "pecuniary loss," or "economic loss," found that the anticipated evidence on the issue of damages for loss of pecuniary benefit in prenatal death cases was "uniformly speculative," and, accordingly, denied the right to maintain such an action. In view of the limitations on the recovery of damages existing in such jurisdictions, these decisions were undoubtedly correct, however, the question remains whether or not the West Virginia Wrongful Death Act contains similarly exacting standards for measuring recovery. The applicable statute (W.Va. Code 55-7-6) provides in pertinent part as follows:

"In every such action the jury may award such damages as they deem fair and just, not exceeding ten thousand dollars, and the amount recovered shall be distributed to the parties and in the proportion provided by law for the distribution of personal estate left by persons dying intestate. In addition, the jury may award such further damages, not exceeding the sum of one hundred thousand dollars, as shall equal the financial or pecuniary loss sustained by the dependent, distributee or distributees of such deceased person and shall be distributed as though part of the decedent's estate to decedent's dependent distributees in the proportions provided by the laws of descent and distribution."

As can be seen from the wording of the statute, an initial award of $10,000.00 may be made by the jury without refer-

ence to dependency or pecuniary loss, and in construing this statute on earlier occasions the West Virginia Court has held that a similar provision permitted recovery without a showing of pecuniary loss. Lester v. Rose, 147 W.Va. 575, 130 S.E.2d 80 (1963); Duling v. Bluefield Sanitarium, Inc., 149 W.Va. 567, 142 S.E.2d 754 (1965). In awarding the initial $10,000.00, the jury may properly consider as elements of damage the grief and mental distress of a parent on account of the loss of a child, Wigal v. City of Parkersburg, 74 W.Va. 36, 81 S.E. 554 (1914), or "the sorrow, the mental distress, and bereavement" of a relative, Kelley v. Ohio River R. Co., 58 W.Va. 216, 52 S.E. 520 (1906). Under such circumstances, no greater problem in ascertaining damages (other than for pecuniary loss) in the case of a stillborn child is presented than in the case of the death of other persons, and it remains only for the jury to determine what would be "fair and just" damages for the sorrow, distress and bereavement suffered by the parent or relative. In approving the trial court's refusal to instruct the jury on the question of pecuniary loss, the West Virginia Court, in the *Duling* case, pointed out that to justify such an instruction there must be proof that the child was gainfully employed or had other income and had a dependent distributee. The difficulty of meeting these requirements, where death occurs at or before birth, is readily ap-

parent. Another reason is the virtual impossibility of knowing or being able to ascertain the child's potential capacity, physical and mental, to produce an economic benefit to his dependents had injury not occurred. We, therefore, hold that, under West Virginia law, as a predicate for an award for loss of economic benefits for the wrongful death of an unborn child, the plaintiff must first produce evidence from which the jury could rationalize and determine with reasonable accuracy the probable quantum of such potential loss. Absent such proof, in the trial of this case the elements of damages must necessarily be confined to sorrow, distress and bereavement, with recovery therefor limited to $10,000.00.

## SUMMARY

Accordingly, on the basis of our review of the existing precedents,[4] as well as the West Virginia law where pertinent, it is our opinion that the West Virginia Supreme Court of Appeals, if called upon to decide a similar case, would hold that an action can be maintained under West Virginia's Wrongful Death Act for recovery of damages for the wrongful death of a stillborn child, but with such damages limited to $10,-000.00 for sorrow, distress and bereavement only. As a consequence of this ruling, defendants' motion to dismiss for failure to state a cause of action must be denied.

4. Among the decisions allowing recovery of damages for wrongful death in the case of a stillborn child are the following: Gullborg v. Rizzo, 331 F.2d 557 (3rd Cir. 1964); but see, Marko v. Philadelphia Transportation Co., 420 Pa. 124, 216 A.2d 502 (1966); Todd v. Sandidge Construction Co., 341 F.2d 75 (4th Cir. 1964); Wendt v. Lillo, 182 F.Supp. 56 (N.D.Iowa, 1960); Hale v. Manion, 189 Kan. 143, 368 P.2d 1 (1962); Verkennes v. Corniea, 229 Minn. 365, 38 N.W. 2d 838, 10 A.L.R.2d 634 (1949); Kwaterski v. State Farm Mutual Automobile Insurance Co., 34 Wis.2d 14, 148 N.W.2d 107 (1967); Rainey v. Horn, 221 Miss. 269, 72 So.2d 434 (1954); Hatala v. Markiewicz, 26 Conn.Sup. 358, 224 A.2d 406 (1966); Mitchell v. Couch, 285 S.W. 2d 901 (Kentucky, 1955); Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E. 2d 106 (1959); Fowler v. Woodward, 244 S.C. 608, 138 S.E.2d 42 (1964); Worgan v. Greggo Ferrara Inc., 128 A.2d 557 (Delaware, 1956); Use of Odham v. Sherman, 234 Md. 179, 198 A.2d 71 (1964); Poliquin v. Macdonald, 101 N.H. 104, 135 A.2d 249 (1957); Porter v. Lassiter, 91 Ga.App. 712, 87 S.E.2d 100 (1955).