Jasen, J.
(dissenting). The majority holds that a mother may not recover for emotional distress resulting from the stillbirth of her child, where the unborn child died as the result of the negligent penetrations of the womb by a physician in performing an amniocentesis. By holding that the physician’s conduct fails to give rise to any cognizable cause of action, the majority relegates the unborn child to a juridical limbo, where negligent acts, with fatal effect, performed upon the child are neither compensated nor deterred.
The facts, gleaned from the complaint and presumed to be true for the purpose of determining the sufficiency of the claim, are as follows. In June 1980, Marta H. Tebbutt and her husband, Robert G. Tebbutt, were expecting their first child, and consulted with Dr. Robert Virostek. Dr. Virostek limited his practice to the specialty of gynecology and obstetrics. In order to insure the health of the unborn child, Dr. Virostek, on July 11, 1980, suggested that Marta, then 35 years of age, undergo amniocentesis. Dr. Virostek informed Mr. and Mrs. Tebbutt that amniocentesis would involve puncturing the womb with a needle syringe in order to draw fluid, but he assured them that the test had been done “hundreds of times without any negative effects.”
At Saranac Lake General Hospital, on July 30, 1980, Dr. Virostek endeavored to perform the amniocentesis. He inserted *934 a syringe into Marta’s lower abdomen, approximately 4% inches below her navel. Dr. Virostek informed Marta that he was unable to extract any fluid, and he then inserted the syringe into her abdomen two more times. Prior to the amniocentesis, the fetal heart monitor showed the fetus to be viable and normal in size for a 16-week gestation. On August 22,1980, at a regularly scheduled appointment, Marta appeared at Dr. Virostek’s office, but he was not present. A nurse, however, performed a procedure to monitor the fetal heart beat, and she informed Marta that no heart beat could be detected. Upon inquiry by Marta on August 25, 1980, Dr. Virostek informed her that the laboratory report indicated that the amniotic fluid sample could not be evaluated due to an excessive amount of blood in the sample. On that date, Dr. Virostek further informed Marta that her unborn child was normal.
On August 30,1980, Marta suffered cramps, pain and hemorrhaging. She met Dr. Virostek at the hospital on September 3, 1980, which was not a date upon which there was a scheduled appointment, and Dr. Virostek examined Marta with a fetal heart monitor. He informed Marta that he could not detect a fetal heart beat. The next day, Marta went to the Champlain Valley Physicians Hospital in Plattsburgh to have a sonogram performed to determine the status of the unborn child. After this procedure, the doctors in the Champlain Valley Hospital refused to tell Marta whether her child was dead or alive. Rather, they referred her back to Dr. Virostek. On September 5,1980, Marta was examined by a gynecologist and obstetrician in Albany, who informed her that her child was dead. Marta entered the Albany Medical Center Hospital that afternoon, and on September 6, 1980, labor was induced and she was delivered of a stillborn male child. The autopsy performed on the stillborn child indicated that the child’s size was consistent with a 16-week gestation and there were no growth abnormalities. Also, examination of the stillborn child revealed three hemorrhagic blisters, each approximately one centimeter in diameter. The Albany physician stated “that there is a possibility of a cause and effect relationship between the amniocentesis, the return of the bloody fluid at the time, and the subsequent fetal death”.
Plaintiffs Marta and Robert Tebbutt[1] commenced this action alleging, inter alia, medical malpractice and negligence in the manner in which defendant performed the amniocentesis. Marta alleged no physical injury distinct from that suffered by her *935 unborn child and sought to recover for her “pain, severe disappointment, anxiety, despondency, bitterness, and suffering.” Defendant, Dr. Virostek, moved for summary judgment on the ground that plaintiff’s complaint, alleging only emotional distress, lacked merit as a matter of law. Special Term, relying upon Friedman v Meyer (90 AD2d 511, appeal dismissed 59 NY2d 763), granted defendant’s motion and dismissed the complaint. The Appellate Division, Third Department, affirmed on “constraint” of Friedman and cases cited therein, while noting “we are sympathetic to plaintiff’s action and, in fact, believe the better rule would recognize plaintiff’s action”. (Tebbutt v Virostek, 102 AD2d 231.) For the reasons that follow, I strongly recommend reversal.
We have previously recognized that an individual may recover damages for the negligent infliction of emotional or mental distress, even if unaccompanied by physical injury. (Johnson v State of New York, 37 NY2d 378; Kennedy v McKesson Co., 58 NY2d 500, 504; Vara v Drago, 24 AD2d 888.) The nature of damages as purely psychic will not defeat the cause of action, provided the elements of a cognizable cause of action exist. (See, Tymann, Bystander’s Recovery for Psychic Injury in New York, 32 Albany L Rev 489, 494; Becker v Schwartz, 46 NY2d 401, 421 [Wachtler, J., dissenting].)
In this case, defendant contends that no recovery may be had for indirect emotional harm suffered as the result of injury to another. Plaintiff, in contrast, maintains that her emotional injuries result from the breach of a direct duty owed to her. The controversy before us has therefore been distilled into the simple inquiry of whether defendant owed plaintiff a duty of care.
As Chief Judge Wachtler has aptly noted, when a child is en ventre sa mere at the time of the commission of the tort, “there are two identifiable beings within the zone of danger each of whom is owed a duty independent of the other and each of whom may be directly injured.” (Albala v City of New York, 54 NY2d 269, 272; see, Becker v Schwartz, 46 NY2d 401, 412, supra; 1 Pegalis and Wachsman, American Law of Medical Malpractice § 4:43.) In the instant action, the independent duty flowing from the physician to the mother arises from the professional relationship existing between Marta Tebbutt and Dr. Virostek, and by virtue of the physiological and biological bond existing between the mother and her unborn child. Dr. Virostek rendered medical care and advice solely to Marta Tebbutt for the purpose of assisting her in making informed decisions to protect the development and safety of her unborn child. At the time of the *936 commission of the tortious act, there was but one patient to whom defendant owed an absolute duty of care pursuant to a professional relationship: Marta Tebbutt. (See, Endresz v Friedberg, 24 NY2d 478, 485-486; compare, Johnson v Jamaica Hosp., 62 NY2d 523; Vacarro v Squibb Corp., 52 NY2d 809.) The interests of the mother and the unborn child are intertwined by nature during the mother’s pregnancy. Due to these relationships, a tortious act, which results in the death of an unborn child, represents a breach of a direct duty to the mother. Defendant’s infringement upon the mother’s freedom from mental distress was occasioned by the breach of a distinct and independent duty flowing to the mother.
Concomitant with the view that the mother is owed a distinct duty of care, women have traditionally been given recovery for their own injuries caused by the stillbirth or miscarriage. (Prosser and Keeton, Torts, at 369, n 30 [5th ed 1984].) In New York, the mother’s immediate mental distress inflicted by the death of the unborn child has unequivocally been recognized as a cognizable element of the mother’s independent injuries. (Endresz v Friedberg, 24 NY2d 478, 487, supra; Butler v Manhattan Ry. Co., 143 NY 417, 420; Matter of Logan, 3 NY2d 800, affg 2 AD2d 842, affg 4 Misc 2d 283;[2] Witrak v Nassau Elec. R. R. Co., 52 App Div 234 [Bartlett, J.].) Compensation for the mother’s emotional distress attendant to the stillbirth is allowed by the vast majority of sister states and uniformly recognized by scholarly commentators. (See, e.g., Tunnicliffe v Bay Cities Consol. Ry. Co., 102 Mich 624, 629-630, 61 NW 11; Snow v Allen, 227 Ala 615, 151 So 468; Graf v Taggert, 43 NJ 303, 312-313, 204 A2d 140; Finer v Nichols, 158 Mo App 539,138 SW 889; Panagopoulous v Martin, 295 F Supp 220, 227 [applying W Va law]; McKillip v Zimmerman, 191 NW2d 706, 709 [Iowa]; Stafford v Roadway Tr. Co., 70 F Supp 555,570 [applying Pa law], mod on other grounds 165 F2d 920; Mone v Greyhound Lines, 368 Mass 354, 359, 331 NE2d 916, 918-919; Occhipinti v Rheem Mfg. Co., 252 Miss 172, 172 So 2d 186; Prescott v Robinson, 74 NH 460, 69 A 522; Marko v Philadelphia Transp. Co., 420 Pa 124,125, 216 A2d 502, 503-504; Ezell v Morrison, 380 So 2d 664 [La App]; see, Recent Developments, Torts-Wrongful Death — Unborn Child, 70 Mich L Rev 729, 749; Recent Developments, Torts-Wrongful Death — Recovery for Wrongful Death of a Stillborn Fetus Examined, 21 Vill L Rev 994, 999; Friedman, Legal Implications of Amniocentesis, 123 U of Pa L Rev 92, 144, n 261; Note, Recovery for the *937 Tortious Death of the Unborn, 33 SC L Rev 797, 811; 1935 Report of NY Law Rev Commn, Liability for Inflicting Injuries On a Child En Ventre Sa Mere 453, 470; Thornton & McNiece, Torts, 33 NYU L Rev 165, 173.)
Our decision in Endresz v Friedberg (supra) is controlling upon the question presented by this appeal. In Endresz, we held that there is no right of recovery under this State’s wrongful death statute by the personal representative of a stillborn child who died as the result of injuries received while en ventre sa mere. Plaintiff, Janice Endresz, was seven months pregnant when injured in an automobile accident in the winter of 1965. Two days after the accident, Janice was delivered of stillborn twins, a male and a female. While wrongful death recovery for the deaths of their unborn children was barred, Chief Judge Fuld, speaking for the court, emphasized that the parents would not be unrecompensed for their tragic loss: “[T]he mother may sue for any injury which she sustained in her own person, including her suffering as a result of the stillbirth, and the father for loss of her services and consortium” (24 NY2d, at p 484). In an effort to demonstrate that the parents are entitled to recovery for damages suffered in their own right, where the death of their children was caused by a third party’s wrongful act, Chief Judge Fuld continued: “If the defendants herein were negligent, Mrs. Endresz may recover for the injuries she sustained, both physical and mental, including the emotional upset attending the stillbirths. And the plaintiff Steve Endresz retains his derivative action for the loss of her services and consortium.” (24 NY2d 478, at p 487 [emphasis supplied].)
The ratio decidendi of Endresz manifestly contemplated a mother’s recovery for her own mental and physical injuries immediately arising from the stillbirths. Recovery of such damages was also viewed by the Endresz court as a means by which to vitiate the harshness of denial of wrongful death damages.[3]
*938 The majority today, however, disregards the Endresz view, and the policies which that decision represents. Adherence today to the Endresz view is compelled by more than due respect to the doctrine of stare decisis.[4] Denial of recovery to the mother for her emotional distress resulting from the stillbirth of her child, which was caused by the negligent conduct of defendant, effectively immunizes the defendant from all liability for his negligent conduct with fatal effect. Denial of recovery for emotional distress creates an anomalous situation, to wit: liability is imposed where defendant’s negligence caused mere injury to the subsequently born child (Woods v Lancet, 303 NY 349), while all liability evaporates when the negligence has had fatal effect. This, I submit, is unjust and unwise.
When the majority’s view is analyzed in terms of the conceptual framework established by this court to address prenatal torts, the logical poverty of its holding is manifest. A stillborn child has not been deemed a “person” to whom a duty of care flowed for purposes of the wrongful death statute. (Endresz v Friedberg, supra.) The majority, consistent with the decisions of *939 this court, adheres to the view that no duty of care is owed to a stillborn child for the purposes of a personal injury action. It should follow that if the unborn child is not deemed a person to whom a duty of care is owed during prenatal care, the duty of care flows to the mother as the single individual biologically intertwined with the unborn child. By holding that a duty of care flows to neither the unborn child nor the mother, the majority renders the mother a bystander to medical procedures performed upon her own body. The practical effect of the majority’s view is that the physician bears no duty of care if his negligence causes the death of the unborn child and the concomitant emotional injury to the mother. The unborn and mothers are entitled to greater protection.
The public policy reasons typically advanced to deny recovery of damages for emotional distress are not implicated in this case. In Becker v Schwartz (46 NY2d 401, 414-415), the damages for emotional harm, sought by the parents of a child suffering from abnormalities, were deemed incalculable since the emotional suffering was mitigated by the emotional fulfillment arising from the birth. The combination of positive and negative emotions rendered the ascertainment of damages too speculative. The death of the unborn child in this case eliminates any possibility of such mitigation. Nor can it be argued that recovery here would extend liability beyond rational practical boundaries. (See, Tobin v Grossman, 24 NY2d 609, 618.) By reasons of the professional physician-patient relationship and physiology, liability for emotional distress extends only to the mother, and not to older children, fathers, grandparents, relatives or others in loco parentis, who, as bystanders, could, under these circumstances, suffer emotional harm only vicariously. The perimeter of liability is thus drawn by nature and contract. Finally, the injury to the unborn child, which resulted in the stillbirth, was caused by the affirmative, negligent conduct of the physician. The abnormality of the child, addressed in Becker v Schwartz (supra) was not caused by the negligent physician. (See also, Howard v Lecher, 42 NY2d 109.)
In sum, plaintiff’s claim for emotional distress against the defendant falls under a traditional negligence theory — i.e., plaintiff would be required to show that the defendant owed her a duty to use reasonable care in performing the genetic testing procedure, that this defendant’s acts constituted a breach of that duty, and that the negligently performed procedure proximately caused injury to the plaintiff. It has been properly noted that “[sjociety has an interest in insuring that genetic testing is properly performed * * * The recognition of a cause of action for *940 negligence in the performance of genetic testing would encourage the accurate performance of such testing by penalizing physicians who fail to observe customary standards of good medical practice.” (Gildiner v Thomas Jefferson Univ. Hosp., 451 F Supp 692, 696.) Absent recognition of the cause of action in this case, such negligence goes entirely unanswered.
Accordingly, the order of the Appellate Division should be reversed.

. Robert’s derivative action seeking compensation for loss of consortium is contingent upon whether Marta has alleged a cognizable claim. References to “plaintiff” thus refer only to Marta.

. By way of dictum in Matter of Logan (4 Misc 2d 283, 285, affd 2 AD2d 842, affd 3 NY2d 800), it was noted that “[o]f course, the pregnant mother may sue on any injury which she suffered in her own person.” (Emphasis added.)

. Twenty-eight jurisdictions have expressly ruled in favor of permitting recovery for the death of a stillborn child, at least where the fetus was viable, either in cases of first impression or in decisions reversing prior law. (Eich v Town of Gulf Shores, 293 Ala 95,300 So 2d 354 [1974]; Summerfield v Superior Ct.,_Ariz_,_P2d_[en banc] [1985]; Hatala v Markiewicz, 26 Conn Sup 358,224 A2d 406 [1966]; Worgan v Greggo & Ferrara, 50 Del 258,128 A2d 557 [1956]; Simmons v Howard Univ., 323 F Supp 529 [DDC 1971]; Porter v Lassiter, 91 Ga App 712, 87 SE2d 100 [1955]; Chrisafogeorgis v Brandenberg, 55 Ill 2d 368,304 NE2d 88 [1973]; Britt v Sears, 150 Ind App 487, 277 NE2d 20 [1972]; Hale v Manion, 189 Kan 143, 368 P2d 1 [1962]; Mitchell v Couch, 285 SW2d 901 [Ky 1955]; State ex rel. Odham v Sherman, 234 Md 179,198 A2d 71 [1964]; Mone v Greyhound Lines, 368 Mass 354,331 NE2d 916 [1975]; O’Neill v Morse, 385 Mich 130, 188 NW2d 785 [1971]; Verkennes v Corniea, 229 Minn 365, 38 NW2d 838 [1949]; Rainey v Horn, 221 Miss 269, 72 So 2d 434 [1954]; *938 White v Yup, 85 Nev 527,458 P2d 617 [1969]; Poliquin v MacDonald, 101 NH 104,135 A2d 249 [1957]; Werling v Sandy, 17 Ohio St 3d 45, 476 NE2d 1053 [1985]; Evans v Olson, 550 P2d 924 [Okla 1976]; Libbee v Permanente Clinic, 268 Ore 258, 518 P2d 636 [1974]; Presley v Newport Hosp., 117 RI 177, 365 A2d 748 [1976]; Fowler v Woodward, 244 SC 608, 138 SE2d 42 [1964]; Moen v Hanson, 85 Wn 2d 597,537 P2d 266 [1975]; Baldwin v Butcher, 155 W Va 431, 184 SE2d 428 [1971]; Kwaterski v State Farm Mut. Auto Ins. Co., 34 Wis 2d 14, 148 NW2d 107 [1967]; Wascom v American Indem. Corp., 383 So 2d 1037 [La App 1980]; Salazar v St. Vincent Hosp., 95 NM 150, 619 P2d 826 [1980]; Vaillancourt v Medical Center Hosp., 139 Vt 138, 425 A2d 92 [1980].)
By comparison, 10 jurisdictions, in addition to New York, deny wrongful death recovery for stillborn infants. (Norman v Murphy, 124 Cal App 2d 95, 268 P2d 178 [1954]; Stern v Miller, 348 So 2d 303 [Fla 1977]; McKillip v Zimmerman, 191 NW2d 706 [Iowa 1971]; State ex rel. Hardin v Sanders, 538 SW2d 336 [Mo 1976]; Drabbels v Skelly Oil Co., 155 Neb 17, 50 NW2d 229 [1951]; Graf v Taggert, 43 NJ 303, 204 A2d 140 [1964]; Gay v Thompson, 266 NC 394,146 SE2d 425 [1966]; Hogan v McDaniel, 204 Tenn 235,319 SW2d 221 [1958]; Nelson v Peterson, 542 P2d 1075 [Utah 1975]; Lawrence v Craven Tire Co., 210 Va 138,169 SE2d 440 [1969].) For a further analysis of the cases in various jurisdictions, see, Annotation, at 84 ALR3d 411 (1978).
The commentators on the subject of death actions for unborn children are virtually unanimous in favor of recovery for viable stillborn infants. (See, e.g., Speiser, Recovery for Wrongful Death § 4:38, at 564 [2d ed 1975]; Comment, Mone v Greyhound Lines, Inc: A Limited Advance in the Law of Prenatal Wrongful Death, 11 New Eng L Rev 669 [1976]; 7 Tex Tech L Rev 821 [1976]; 21 Vill L Rev 994 [1975-1976]; Comment, Wrongful Death and the Unborn, 13 J Fam Law 99 [1973-1974]; 38 Temp LQ 470 [1965]; Del Tufo, Recovery for Prenatal Torts: Actions for Wrongful Death, 15 Rutgers L Rev 61 [I960].)

. The importance of stare decisis has been observed in a related context (Bovsun v Sanperi, 61 NY2d 219, 243 [Wachtler, J., dissenting]).