In re the Paternity of C.A.V.M.:

Shannon E. T.,
Petitioner-Appellant,†

Bye, Goff & Rohde, Ltd.,
Appellants,

v.

Alicia M. V.M. an individual,
by her guardians, Patricia N. and Brian V.M.,
Respondents-Respondents.

Court of Appeals

*No. 2005AP77. Submitted on briefs June 14, 2005.
—Decided May 25, 2006.*

2006 WI App 104

(Also reported in 718 N.W.2d 729.)

† Petition to review granted 8-30-06.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Ardell W. Skow, Doar, Drill & Skow S.C.*, Baldwin.

On behalf of the appellant, the cause was submitted on the brief of *C.M. Bye, Bye, Goff & Rohde, Ltd.*, River Falls.

On behalf of the respondents-respondents, the cause was submitted on the briefs of *Richard W. Zalewski* and *Michael J. Roman, Zalewski, Klinner & Kramer, LLP*, Wausau.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. Shannon E.T. appeals from an order dismissing an action under Wis. Stat. § 767.45[1] to establish his paternity of C.A.V.M., stillborn as the result of a motor vehicle accident. Shannon brought this action to establish his paternity for the purpose of the wrongful death action that he had already initiated. We conclude that § 767.45(1) does not permit a man alleging he is the father to bring a paternity action for the sole purpose of establishing paternity of a stillborn so that he may bring a wrongful death action based on the stillbirth. Accordingly, although our rationale differs from that of the circuit court, we affirm the dismissal of this action.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## BACKGROUND

¶ 2. The paternity petition alleged as follows. Alicia M. V.M. was involved in a car accident when she was twenty-seven weeks pregnant with C.A.V.M and C.A.V.M. was viable. As a result of the accident, C.A.V.M. was stillborn and Alicia was incapacitated. Shannon is the father of C.A.V.M., and during periods of the pregnancy he resided with Alicia and assisted with C.A.V.M.'s prenatal care. Shannon seeks a paternity determination in connection with a wrongful death action based on C.A.V.M.'s stillbirth that he has filed in another county; that action has been continued pending the determination in this paternity action.

¶ 3. Alicia, through her guardians, filed a motion to dismiss this action, arguing that WIS. STAT. § 767.45 does not provide a basis for determining the paternity of a stillborn and, therefore, Shannon's petition failed to state a claim upon which relief could be granted and the court lacked competency over the matter. Shannon disputed this construction of § 767.45, arguing that the statute does not define "child," and does not require a live birth in order for a court to adjudicate paternity.

¶ 4. In a written decision, the circuit court granted the motion to dismiss. The court concluded that a paternity action under WIS. STAT. § 767.45 required the "birth" of a child and concluded that a stillbirth did not qualify as the "birth" of a child. In reaching this conclusion, the court employed an analysis similar to that which the supreme court used in *State ex rel. Angela M. W. v. Kruzicki*, 209 Wis. 2d 112, 561 N.W.2d 729 (1997). In that case, the supreme court concluded that "child" in WIS. STAT. § 48.02(2) (1993–94) meant a human being born alive and did not include a viable fetus; the court reached that conclusion by considering the word in its

statutory context. *Angela M.W.*, 209 Wis. 2d at 137. In this case, the circuit court considered the requirements in Wis. Stat. § 767.51(3)(b)-(d) that a paternity judgment "shall" contain orders for the legal custody, physical placement, and support of a child, as well as a determination as to which parent, if eligible, has the right to claim the child as an exemption for federal tax purposes. The court found that none of these provisions would apply if there were a stillbirth, and therefore allowing the paternity adjudication of a stillborn would render these statutory requirements absurd. The court also noted that § 767.45(3) requires that the "birth" of the child occur before a paternity adjudication is completed, and, in light of the requirements for the judgment in § 767.51(3)(b)-(d), the legislature meant a live birth.[2]

---

[2] Alicia also filed a motion, through her guardians, seeking to disqualify the firm representing Shannon in this action on the ground that it was the same firm the guardians had retained to represent Alicia in connection with the accident. The submissions showed that, after investigating the accident, the firm informed Alicia's guardians that it would not pursue any action on her behalf. Less than a month later, the same firm filed the wrongful death action on behalf of Shannon against American Family Mutual Ins. Co., Alicia's insurer, and the driver of the other car, alleging that he was the father of C.A.V.M. and the negligence of Alicia and of the other driver caused the accident, which resulted in the stillbirth of C.A.V.M. Alicia's motion to disqualify asserted that this paternity action is contrary to her interests and, in the prior representation of her, the firm had obtained confidential information that could be used against her in this action. The circuit court granted this motion. The law firm appeals that order, with other counsel representing Shannon in appealing the order dismissing this action. Because of our disposition of the dismissal order, it is not necessary to consider the disqualification order.

## DISCUSSION

¶ 5. On a motion to dismiss for failure to state a claim,[3] we take as true the allegations in the complaint and all reasonable inferences therefrom. *Scott v. Savers Property & Cas. Ins. Co.*, 2003 WI 60, ¶ 5, 262 Wis. 2d 127, 663 N.W.2d 715. Whether a complaint states a claim for relief presents a question of law, which we review de novo. *Id.*, ¶ 6.

¶ 6. The resolution of the motion to dismiss here requires a construction of various statutory provisions, which is also a question of law. *Marder v. Bd. of Regents of Univ. of Wis. Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Cir. Ct. for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the

---

[3] Both of the parties appear to agree that a motion to dismiss for failure to state a claim is the proper formulation of a motion asserting that Shannon may not obtain a paternity declaration under WIS. STAT. §§ 767.45–767.62 because C.A.V.M. was stillborn. We accept this formulation for purposes of our analysis. The significant point for our standard of review is that we are construing §§ 767.45–767.62 based on the facts alleged in the petition, and thus a question of law is presented, which we review de novo.

538

statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If we conclude that the application of these principles results in statutory language that is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses—then we may employ sources extrinsic to the statutory text. *Id.*, ¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50.

¶ 7. In the circuit court and in their initial briefs the parties focused on the meaning of the word "child" in WIS. STAT. § 767.45(1), which provides in relevant part:

> **(1)** The following persons may bring an action or motion, including an action or motion for declaratory judgment, for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.405 or 891.41 (1):
>
> (a) The child.
>
> (b) The child's natural mother.
>
> (c) Unless s. 767.62 (1) applies, a man presumed to be the child's father under s. 891.405 or 891.41 (1).
>
> (d) A man alleged or alleging himself to be the father of the child.[4]

---

[4] The rest of WIS. STAT. § 767.45(1) provides:

(e) The personal representative of a person specified under pars. (a) to (d) if that person has died.

(f) The legal or physical custodian of the child.

(g) This state whenever the circumstances specified in s. 767.075 (1) apply, including the delegates of the state as specified in sub. (6).

¶ 8. The parties agree that the word "child" is ambiguous in this statute. Shannon argues that the more reasonable construction is that "child" includes a fetus that is stillborn, while Alicia argues that it is more reasonable to construe "child" to require a live birth. Shannon argues, in addition, that if we construe "child" to exclude a fetus that is stillborn, then he is deprived of the opportunity to bring a wrongful death action, which, he asserts, he has the right to bring under *Kwaterski v. State Farm Mutual Automobile Ins. Co.*, 34 Wis. 2d 14, 15, 22, 148 N.W.2d 107 (1967). In *Kwaterski*, the court construed the term "person" in the wrongful death statute, Wis. Stat. § 895.03 (1965), to include a viable fetus; the court concluded that the parents had a cause of action against the driver of the other vehicle for wrongful death, based on the allegations that the other driver's negligence caused injuries to the fetus that resulted in a stillbirth. *Kwaterski*, 34 Wis. 2d at 15, 22.

¶ 9. We asked for supplemental briefing on the question of how, if at all, Wis. Stat. § 885.23 relates to the issue whether Shannon may bring a paternity action under Wis. Stat. § 767.45(1) for purposes of

(h) This state as provided under sub. (6m).

(i) A guardian ad litem appointed for the child under s. 48.235, 767.045 (1) (c) or 938.235.

(j) A parent of a person listed under par. (b), (c) or (d), if the parent is liable or is potentially liable for maintenance of a child of a dependent person under s. 49.90 (1) (a) 2.

(k) In conjunction with the filing of a petition for visitation with respect to the child under s. 767.245 (3), a parent of a person who has filed a declaration of paternal interest under s. 48.025 with respect to the child or a parent of a person who, before April 1, 1998, signed and filed a statement acknowledging paternity under s. 69.15 (3) (b) 3. with respect to the child.

540

determining his paternity so that he may pursue a wrongful death claim. Section 885.23 provides:

> **Genetic tests in civil actions.** Whenever it is relevant in a civil action to determine the parentage or identity of any child, person or corpse, the court, by order, shall direct any party to the action and any person involved in the controversy to submit to one or more genetic tests as provided in s. 767.48. The results of the tests shall be receivable as evidence in any case where exclusion from parentage is established or where a probability of parentage is shown to exist. Whenever the court orders the genetic tests and one of the parties refuses to submit to the tests that fact shall be disclosed upon trial.

Shannon's position is that, although he might have the right to bring a motion under § 885.23 to determine his paternity in the wrongful death action, he also has a right to bring this paternity action for that purpose because the circuit court "has not permitted a paternity determination in that action." Alicia's position is that § 885.23 is irrelevant to whether Shannon may bring a paternity action to determine his paternity of a still-born.[5]

---

[5] We asked for supplemental briefing after our certification to the supreme court was denied. *See Shannon E.T. v. Alicia M. V.M.*, No. 05–77, unpublished certification (WI App July 14, 2005), denied (WI Sept. 8, 2005). The issue we certified was whether "birth of a child" in WIS. STAT. § 767.45 requires a live birth.

In our order on supplemental briefing, in addition to asking the parties to address WIS. STAT. § 885.23, we asked them to brief whether the case *DiBenedetto v. Jaskolski*, 2003 WI App 70, ¶¶ 22–32, 261 Wis. 2d 723, 661 N.W.2d 869, has any bearing on the issue whether Shannon may bring an action under WIS. STAT. § 767.45(1) to determine his paternity of C.A.V.M. for the

¶ 10. We view the dispositive issue to be whether Shannon may bring a paternity action for the sole purpose of determining his paternity so that he may proceed with the wrongful death action involving C.A.V.M. We conclude that WIS. STAT. §§ 767.45—767.62 (which we will refer to as "the paternity statute") is ambiguous on this point. By consulting the legislative history of the statute and considering WIS. STAT. § 885.23, which we view as a related statute, we conclude the legislature did not intend that a paternity action be initiated by a man alleging he is the father when the sole purpose is to obtain a determination of paternity so that he may proceed with a wrongful death action.

■

¶ 11. In general, the paternity statute establishes a very detailed procedure for making a determination of paternity and for making decisions and orders regarding the care of the "child" and expenses associated with the "child." WISCONSIN STAT. § 767.50(1) provides that the "trial shall be divided into 2 parts. The first part shall deal with the determination of paternity. The 2nd part shall deal with child support, legal custody, periods of physical placement, and related issues." There is no express provision that a paternity action may be brought only if the paternity adjudication is for the purposes of

purpose of bringing a wrongful death action. In the referenced *DiBenedetto* paragraphs, we held that the personal representative had the authority in that probate proceeding to bring a motion under §§ 767.45(1)(e) and 885.23 to determine the paternity of the decedent, which was necessary in order to determine his lawful heirs; and, we concluded the personal representative had acted unreasonably in not doing so. We do not discuss *DiBenedetto* in this opinion because we conclude it does not assist in resolving the issue on this appeal.

establishing "child support, legal custody, periods of physical placement, and related issues." However, we conclude this is a reasonable construction of the statute in view of § 767.50(1), the provisions regarding the best interests of the child, *see, e.g.,* WIS. STAT. §§ 767.46(2) and 767.463, and the provision on the contents of a judgment or order of paternity, WIS. STAT. § 767.51(3). That section provides:

> **(3)** A judgment or order determining paternity shall contain all of the following provisions:
>
> (a) An adjudication of the paternity of the child.
>
> (b) Orders for the legal custody of and periods of physical placement with the child, determined in accordance with s. 767.24.
>
> (c) An order requiring either or both of the parents to contribute to the support of any child of the parties who is less than 18 years old, or any child of the parties who is less than 19 years old if the child is pursuing an accredited course of instruction leading to the acquisition of a high school diploma or its equivalent, determined in accordance with s. 767.25.
>
> (d) A determination as to which parent, if eligible, shall have the right to claim the child as an exemption for federal tax purposes under 26 USC 151 (c) (1) (B), or as an exemption for state tax purposes under s. 71.07 (8) (b).
>
> (e) An order requiring the father to pay or contribute to the reasonable expenses of the mother's pregnancy and the child's birth, based on the father's ability to pay or contribute to those expenses.[6]

---

[6] Effective April 20, 2006, 2005 Wis. Act 304, §§ 1s, 2 amended and renumbered WIS. STAT. § 767.51(3)(e) to

(f) An order requiring either or both parties to pay or contribute to the costs of the guardian ad litem fees, genetic tests as provided in s. 767.48 (5) and other costs.

(g) An order requiring either party to pay or contribute to the attorney fees of the other party.

¶ 12. We conclude it is reasonable to read WIS. STAT. § 767.51(3) as expressing a legislative intent that any paternity judgment must contain provisions regarding the child's support, care, and custody. However, we do not agree with Alicia that § 767.51(3) plainly means that every paternity judgment or order must contain all the items in that section, thus showing that the legislature intended that "child" requires a live birth. First, when a baby is born alive but then dies, there is no need for orders regarding custody, placement, and current and future child support. In other words, the provisions that contemplate making decisions about a live child are inapplicable both where there is a stillbirth and where there is a live birth but the child dies thereafter. Second, even if the child is alive at the time of the proceeding, there may be no need for some of the orders. For example, a paternity action may be brought within nineteen years of a child's birth, *see* WIS. STAT. §§ 767.475(5) and 893.88, but if the child is over eighteen, there would be no orders on legal custody or physical placement under para. (b) in § 767.51(3). Other examples are: there may be no guardian ad litem fees or genetic tests and so no reason for an order under para. (f), and there may be no attorneys and so no reason for an order under para. (g).

§ 767.51(3)(e)1. and 2.; however, the amendment and renumbering does not affect our analysis.

¶ 13. Third, we observe that, while orders regarding the custody and placement of the child and support of the child (to the extent it is current and future support) under WIS. STAT. § 767.51(3)(b)-(d) obviously do not apply if there is a stillbirth, that is not true of contribution "to the reasonable expenses of the mother's pregnancy," and it may not be true of the expenses of "the child's birth." Section 767.51(3)(e). Plainly there are "expenses of the mother's pregnancy" such as doctor visits, even if there is a stillbirth rather than a live birth. Whether "expenses of . . . the child's birth" includes the hospital expenses from a stillbirth requires a construction of "birth" and "child." In short, we view § 767.51(3) as illustrating the ambiguity of the meaning of "child" and "birth" rather than resolving it.[7]

---

[7] For essentially the same reason, we do not agree with Alicia that WIS. STAT. § 767.45(3) shows the legislature's intent that there be a live birth rather than a stillbirth. That section provides:

> **(3)** If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except that service of process, service and filing of pleadings, the first appearance and the taking of depositions to preserve testimony may be done before the birth of the child.

This section plainly permits a paternity action to be brought while the woman is still pregnant, at which time no one knows if there will be a live birth. This section does not state that the action must be dismissed if there is a not a live birth. Thus, for example, if the woman or district attorney brought a paternity action during the pregnancy, the action was stayed, and there was a stillbirth, it may be that the woman or district attorney would wish to continue the action to obtain a determination of paternity and payment of or contribution for the expenses of pregnancy and the medical expenses associated with the stillbirth under WIS. STAT. § 767.51(3)(e). Whether a proper con-

¶ 14. Because we conclude the statute is ambiguous, we consider the legislative history to determine whether the legislature intended that a paternity action be initiated in a situation such as this—when there was a stillbirth and no order is sought other than a paternity adjudication for the purpose of pursuing a wrongful death action concerning the stillbirth.

¶ 15. The paternity statute has its origins in a statute almost as old as Wisconsin's statehood. Wis. Stat. ch. 31 (1849). The original statute was concerned with the ability of the town in which a child was born to an unmarried mother to obtain money from the father for the child's support and for the expenses of "the lying in and the support and attendance upon the mother of such child during her sickness." *See* Wis. Stat. ch. 31, §§ 3, 7, 13 (1849).

¶ 16. Subsequent changes provided that paternity actions (then called illegitimacy actions) were to be brought only by the district attorney. *See* Wis. Stat. ch. 166 (1929).[8] It was not until 1963 that the legislature authorized the court to make other than financial provisions for the child: Wis. Stat. § 52.21(2), created by 1963 Wis. Laws, ch. 426, § 2, authorized the court in a paternity action to make orders for "the suitable care,

struction of the statute would allow this is an issue we need not resolve in this case. However, we do not agree that § 767.45(3) plainly would not allow this.

[8] 1907 Wis. Laws, ch. 648 enacted Wis. Stat. § 1533m, which required the district attorney "to appear and prosecute in all bastardy proceedings." Certain towns still retained the authority to enter into a compromise with the putative father and release him from liability, but that town authority ended in 1929, when the authority to compromise was given only to district attorneys. *See* 1929 Wis. Laws, ch. 439, § 10, enacting Wis. Stat. § 166.22.

custody, support, and maintenance of the child," in addition to the financial orders that had long been required. However, the requirement that the action must be initiated with a complaint by the district attorney remained until 1981. *See* 1979 Wis. Laws, ch. 352, repealing §§ 52.22–52.25, effective July 1, 1981.

¶ 17. The significant changes that authorized a man alleging he is the father to bring a paternity action were enacted by 1979 Wis. Laws, ch. 352, § 25, which also added the child, the mother, a man presumed or alleged to be the father, and specified others as persons authorized to bring the action. *See* WIS. STAT. § 767.45(1) (1981–82). This amendment occurred following changes that had been made to other statutes to provide a procedure for an unmarried father to declare his paternity,[9] which, legislative notes show, were prompted by United States Supreme Court decisions relating to the rights of unmarried fathers.[10]

¶ 18. Another area of significant changes in 1979 Wis. Laws, ch. 352 brought paternity actions more in line with orders in divorce actions concerning the care, custody, and support of children; indeed, the statute at that time was renumbered and placed in WIS. STAT. ch. 767, "Actions Affecting the Family." *See* 1979 Wis. Laws,

---

[9] *See* 1973 Wis. Laws, ch. 263, § 19, enacting WIS. STAT. § 269.56(3m), which was subsequently renumbered to WIS. STAT. § 806.04(3m), *see* Judicial Council Committee's note, 1977, WIS. STAT. § 806.04, and was repealed by 1979 Wis. Laws, ch. 352, § 26; and *see* 1973 Wis. Laws, ch. 263, §§ 2, 3, 6 and 7, enacting WIS. STAT. §§ 48.025, 48.195, 48.42(3), and 48.425.

[10] *See* the prefatory note prepared by the legislative council, located in the drafting records for 1973 Wis. Laws, ch. 263, in the Legislative Reference Bureau Analysis of 1973 SB 566, LRB-4575/1.

ch. 352, §§ 19, 25.[11] Material in the legislative record shows that these changes were intended to ensure that children of unmarried parents were treated in the same way as children of married parents who were no longer living together or were divorced. *See* Division of Economic Assistance Memorandum of September 6, 1978, regarding the Paternity Committee Report, from Sherwood K. Zink, Legal Counsel of the Bureau of Child Support, located in the drafting records to 1979 Wis. Laws, ch. 352, SB 249.

¶ 19. The amendment to WIS. STAT. § 767.45(1) authorizing the listed persons to bring a "motion" as well as an "action" was enacted by 1987 Wis. Act 413, § 68. The introductory note to that act stated: it is "in the interest of each child to identify the child's father for reasons including medical information and financial support . . . it is the policy of this state to promote the interest of children in knowing the identity of both parents." 1987 Wis. Act 413, § 1.

¶ 20. The language in WIS. STAT. § 767.45(1), "including an action or motion for declaratory judgment," was added by 1993 Wis. Act 481, § 127. That same act

---

[11] WISCONSIN STAT. § 767.51(3), as originally enacted in 1979 Wis. Laws, ch. 352, § 25, provided:

> The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. The judgment or order may direct the father to pay or contribute to the reasonable expenses of the mother's pregnancy and confinement during pregnancy and may direct either party to pay or contribute to the costs of blood tests, attorney fees and other costs. Contributions to the costs of blood tests shall be paid to the county which paid for the blood tests.

It was amended to its present form by 1999 Wis. Act 9, § 3065cs.

made changes in a number of other statutes that were described in fiscal estimates as improving child support collection by "streamlining procedures and providing additional tools to establish paternities and establish and collect child support." *See* Fiscal Estimate of May 11, 1994, on Child Support Enforcement, prepared by DHSS, 1994 Spec. Sess. SB 2, located in the drafting records for 1993 Wis. Act 481, part 1, LRB-6036.

■■■

¶ 21. This legislative history shows that the current paternity statute reflects a number of important legislative policies and purposes: that mothers and other entities who incur expenses related to the mother's pregnancy, the birth of a child and the care of a child have a procedure to determine paternity so that the father contributes to those expenses; that unmarried fathers have a procedure for establishing their paternity so that they can participate in parenting their child; that courts have the same authority to make orders regarding the care of children in their best interests that they have in other actions affecting the family; and that children of unmarried parents have a procedure for establishing who their father is and obtaining any benefits that flow from that.[12] None of these policies and purposes appear to encompass bringing a paternity action to determine paternity for the

---

[12] There are other policies and purposes expressed in the text of the statute itself, which we do not mention because they are not relevant to our analysis. For example, WIS. STAT. § 767.45(1)(c), enacted by 1979 Wis. Laws, ch. 352, § 25, provides that "[a] man presumed to be the child's father" may bring a paternity action to rebut that presumption. This text expresses another purpose of the statute: to provide a procedure which men presumed by statute to be the father can use to establish that they are not the father.

sole purpose of bringing another action. Thus, while legislative history does not conclusively demonstrate that the legislature did not intend this, we view the legislative history as an indication that the legislature did not.

¶ 22. We now turn to an examination of WIS. STAT. § 885.23. The language of the statute plainly provides for a determination of paternity if it is relevant in a civil action. Thus, it is plain that a paternity action is not the only action in which a determination of paternity may be made. We do not agree with Alicia that § 885.23 is irrelevant to our construction of WIS. STAT. § 767.45. Because § 885.23 provides a procedure for a determination of paternity in a civil action other than a paternity action, when paternity is relevant in that other action, the question arises whether the legislature intended that a paternity action be initiated for that purpose, even though no other order regarding the care of the child or expenses associated with the pregnancy or the child's birth is sought. One might reasonably argue that these are simply two vehicles available to a person in Shannon's situation. Alternatively, one might also reasonably argue that the legislature did not intend that a paternity action be initiated solely for the purpose of determining paternity when it is a relevant issue in another action.

¶ 23. We conclude the latter construction is more reasonable. First, the predecessor to WIS. STAT. § 885.23 was originally enacted in 1935. *See* 1935 Wis. Laws, ch. 351, § 1. Because there already existed a procedure for determining paternity in a civil action within that action, when paternity was relevant, there is no reason to think the legislature intended to create an entirely separate action for that purpose when, in 1979 Wis. Laws, ch. 352, § 25, it expanded the list of persons

permitted to bring a paternity action. Second, as we have discussed above, the legislative history of the paternity statute indicates that the changes in the statute over the years were driven by policies and purposes that do not include creating a separate action to determine paternity for the purpose of bringing another action.

¶ 24. We conclude that WIS. STAT. § 767.45(1) does not permit a man alleging he is the father to bring a paternity action for the sole purpose of establishing paternity of a stillborn so that he may bring a wrongful death action. Accordingly, although our rationale differs from that of the circuit court, we affirm the dismissal of this action.[13]

¶ 25. We emphasize that our conclusion on the proper construction of WIS. STAT. § 767.45(1), and our

---

[13] In the initial round of briefing Shannon argued that, if we do not construe WIS. STAT. § 767.45(1) to permit him to bring this action, there is a violation of his right to a remedy (that is, on his wrongful death claim) under article I, section 9 of the Wisconsin Constitution and his right to equal protection of the law under Fourteenth Amendment of the United States Constitution and article I, section 1 of the Wisconsin Constitution. Both of these arguments were brief and both were based on the premise that there was no procedure for establishing paternity for the purpose of the wrongful death claim except through a paternity action. In his supplemental brief, Shannon takes the position that he may bring a motion under WIS. STAT. § 885.23 in the wrongful death action. We therefore do not address his constitutional arguments. We also do not address the argument in Shannon's initial brief that WIS. STAT. § 895.01(a), which provides that a cause of action to determine paternity survives, requires that he be permitted to bring this action. This argument consists of two sentences and is not adequately developed.

551

discussion of WIS. STAT. § 885.23 in arriving at that conclusion is not, as Alicia contends, an advisory opinion. We are not ruling on the correctness of the circuit court's decision in the wrongful death action. That decision is not before us. We do not know precisely what that decision was, what the grounds for it were, and what arguments were made to that court. Nothing in this opinion requires that the circuit court in the wrongful death action grant a motion by Shannon in that action to allow him to establish his paternity. Whether such a motion, if brought, should be granted depends on the resolution of issues we do not address in this case, including whether Shannon's paternity is relevant in that action, which, in turn, depends on whether, if he is the father of C.A.V.M., he has a cause of action for wrongful death. These issues are not before us and we do not address them.

*By the Court.*—Order affirmed.