In re the Paternity of C.A.V.M.:

Shannon E. T., Petitioner-Appellant-Petitioner,

Bye, Goff, & Rohde, Ltd., Appellant,

v.

Alicia M. V.M. an individual, by her guardians,
Patricia N. and Brian V.M.,
Respondents-Respondents.

Supreme Court

*No. 2005AP77. Oral argument December 13, 2006.
—Decided March 9, 2007.*

2007 WI 29

(Also reported in 728 N.W.2d 636.)

For the petitioner-appellant-petitioner there were briefs by *Moses J. Zimmerman* and *Murphy & Prachthauser,* Milwaukee, and oral argument by *Moses J. Zimmerman.*

For the respondents-respondents there was a brief by *Michael J. Roman* and *Zalewski, Klinner & Kramer, LLP,* Wausau, and oral argument by *Michael J. Roman.*

¶ 1. N. PATRICK CROOKS, J. This is a review of a published decision of the court of appeals,[1] affirming an order of the Circuit Court for Monroe County, Judge Michael J. McAlpine, dismissing Shannon E.T.'s paternity action against Alicia M. V.M. and her legal guardians, Patricia N. and Brian V.M.

---

[1] *Shannon E.T. v. Alicia M. V.M.,* 2006 WI App 104, 294 Wis. 2d 531, 18 N.W.2d 729.

¶ 2. Shannon E.T. (Shannon) seeks to establish his paternity of C.A.V.M., who was stillborn as a result of a motor vehicle accident involving Alicia M. V.M. (Alicia), the mother of C.A.V.M. The court of appeals held that Wis. Stat. § 767.45(1) (2003–04)[2] does not permit Shannon to bring an action under that section solely for the purpose of establishing paternity of the stillborn, in order to bring an action for the stillborn's wrongful death.

¶ 3. Wisconsin Stat. § 767.45(1)[3] provides in relevant part:

> The following persons may bring an action or motion, including an action or motion for declaratory judgment, for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.405 or 891.41(1):
>
> (a) The child.
>
> (b) The child's natural mother.
>
> (c) Unless s. 767.62(1) applies, a man presumed to be the child's father under s. 891.405 or 891.41(1).
>
> (d) A man alleged or alleging himself to be the father of the child.

¶ 4. In the petition for review, we are asked to answer the question of whether Shannon, as an unmarried man alleging himself to be the father of a stillborn, may bring a paternity action under Wis. Stat. § 767.45(1) to establish paternity for purposes of bring-

[2] All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] Wisconsin Stat. § 767.45(1) was amended and renumbered as Wis. Stat. § 767.80, by 2005 Wis. Act 443, § 184 (effective January 1, 2007).

ing a claim for the wrongful death of a viable fetus that was stillborn. We answer this question in the negative. However, we hold that, under such circumstances, Shannon, who is alleging that he is the father, may bring a motion under Wis. Stat. § 885.23 to determine his parentage in the pending wrongful death action.

¶ 5. The decision of the court of appeals is affirmed, but on the grounds set forth herein.

I

¶ 6. Alicia was 27 weeks pregnant when she was involved in a motor vehicle accident that caused her son, C.A.V.M., to be stillborn. As a result of the accident, Alicia, herself, became legally incompetent.

¶ 7. Shannon alleges that he is C.A.V.M.'s father. Shannon claims that he resided with Alicia during periods of her pregnancy and assisted with prenatal care.

¶ 8. Following the motor vehicle accident, Shannon initiated a wrongful death action in Wood County Circuit Court before the Honorable Edward F. Zappen, Jr., alleging that he was the father of C.A.V.M., that C.A.V.M. had been a viable fetus, and that the stillbirth was due to the negligence of Alicia and/or the other driver. The circuit court stayed the wrongful death action, holding that Shannon could not proceed without a determination that he was the father of C.A.V.M.[4] Shannon then commenced this paternity action in Monroe County.

¶ 9. Alicia's legal guardians filed a motion to dismiss on behalf of Alicia, arguing that Wis. Stat.

---

[4] The decision of the Wood County Circuit Court requiring that Shannon obtain a paternity determination has not been appealed.

§ 767.45(1) does not provide a basis for determining the paternity of a stillborn, and that Shannon, therefore, failed to state a claim upon which relief could be granted. Shannon argued that § 767.45 does not define "child" and does not require a live birth, in order for a court to adjudicate paternity.

¶ 10. The Monroe County Circuit Court, Judge Michael J. McAlpine, granted Alicia's motion to dismiss. The court concluded that a paternity action brought under Wis. Stat. § 767.45(1) requires the birth of a child and that stillbirth did not qualify as a birth. In its analysis, the circuit court cited *State ex rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 138, 561 N.W.2d 729 (1997), in which this court held that the term "child" in Wis. Stat. § 48.02(2) (1993–94) meant a human being born alive, and did not include a viable fetus.

¶ 11. In its analysis, the Monroe County Circuit Court also discussed Wis. Stat. §§ 767.51(3)(b), (c), and (d), which require that "[a] judgment or order determining paternity shall contain" orders for legal ·custody, physical placement, and support of a child, as well as a determination as to which parent has the right to claim the child for tax exemption purposes. The court concluded that the language contained in these provisions would be rendered absurd, if the meaning of the term "birth" were to include stillbirth, because none of the provisions therein applied in the case of a stillbirth.

¶ 12. Shannon appealed, and the court of appeals affirmed the decision of the Monroe County Circuit Court, but on somewhat different grounds. The court of appeals held that Wis. Stat. § 767.45(1) does not permit a man alleging he is the father to bring a paternity action for the sole purpose of establishing paternity of a stillborn, so that he may bring an action for the

606

stillborn's wrongful death. *Shannon E.T. v. Alicia M. V.M.*, 2006 WI App 104, ¶ 24, 294 Wis. 2d 531, 718 N.W.2d 729.

¶ 13. The court of appeals noted that the parties to this action agreed that the word "child" in Wis. Stat. § 767.45(1) is ambiguous. *Id.*, ¶ 8. Alicia argued that "child" should be read to require a live birth. Shannon argued that § 767.45(1) should be construed to include a stillborn fetus within the meaning of the word "child." Shannon further argued that if the term "child" excludes a stillborn, then he would be deprived of the right to bring a wrongful death action.

¶ 14. In support of his position, Shannon cited *Kwaterski v. State Farm Mutual Automobile Ins. Co.*, 34 Wis. 2d 14, 15, 22, 148 N.W.2d 107 (1967), in which this court concluded that the term "person" in the wrongful death statute, Wis. Stat. § 895.03 (1965),[5] includes a viable fetus. In *Kwaterski,* the parents of a viable fetus that was stillborn alleged that the stillbirth was caused by another driver's negligence in a motor vehicle accident. This court held that the parents of the stillborn had a cause of action for wrongful death against the driver of the other vehicle. *Kwaterski,* 34 Wis. 2d at 22.

¶ 15. The court of appeals considered Wis. Stat. § 767.45(1) within the context of the entire paternity statute, Wis. Stat. §§ 767.45–767.62, and concluded that the language of § 767.45(1) is ambiguous, in regard to this matter. The court of appeals noted that the paternity statute includes detailed procedures for making a paternity determination, as well as for issuing orders related to the care of a "child" and expenses associated with a "child." *Shannon E.T.*, 2006 WI App

---

[5] The language of Wis. Stat. § 895.03 (1965) is identical to the language of Wis. Stat. § 895.03 (2003–04).

104, ¶ 11. Section 767.50(1) states that a paternity trial shall consist of two parts: "The first part shall deal with the determination of paternity. The 2nd part shall deal with child support, legal custody, periods of physical placement, and related issues."

¶ 16. The court of appeals noted that the paternity statute does not expressly provide that a paternity action may be brought only if the adjudication of paternity is for the purposes of determining child support, legal custody, physical placement, and related issues. *Id.* However, the court of appeals stated that it is reasonable to conclude that the legislature intended, through Wis. Stat. § 757.51(3), to require that any paternity judgment must contain provisions regarding the support, care, and custody of the child. *Id.,* ¶ 12. In its analysis, the court considered other sections of the paternity statute, including Wis. Stat. §§ 767.46(2) and 767.463, which deal with the best interest of the child, and § 767.51(3),[6] which deals with the contents of a judgment or order of paternity. *Id.*

---

[6] Wisconsin Stat. § 767.51(3) provides:

A judgment or order determining paternity shall contain all of the following provisions:

(a) An adjudication of the paternity of the child.

(b) Orders for the legal custody of and period of physical placement with the child, determined in accordance with s. 767.24.

(c) An order requiring either or both of the parents to contribute to the support of any child of the parties who is less than 18 years old, or any child of the parties who is less than 19 years old if the child is pursuing an accredited course of instruction leading to the acquisition of a high school diploma or its equivalent, determined in accordance with s. 767.25.

(d) A determination as to which parent, if eligible, shall have the right to claim the child as an exemption for federal tax purposes under 26 USC 151 (c)(1)(B), or as an exemption for state tax purposes under s. 71.07(8)(b).

¶ 17. The court disagreed with Alicia's argument that Wis. Stat. § 757.51(3) requires every paternity judgment or order to contain all of the items listed in that section and that, therefore, the legislature intended that "child" requires a live birth. *Id.* The court of appeals noted that, in cases where a child is born alive, but later dies, the provisions of § 757.51(3) that contemplate decisions regarding a live child are inapplicable, just as they are inapplicable in the case of a stillbirth. The court also reasoned that, even in the case of a live child, some of the orders listed in § 757.51(3) may not be necessary. *Id.*

¶ 18. After concluding that Wis. Stat. § 767.45(1) was ambiguous, the court of appeals then looked to the legislative history of the paternity statute, §§ 767.45–767.62, and noted its policies and purposes. The original predecessor to today's paternity statute was Wis. Stat. Chapter 31 (1849), which served the purpose of allowing the town in which a child was born to an unmarried mother to obtain money from the father for the child's support and expenses.[7] *Id.,* ¶ 15.

(e) An order requiring the father to pay or contribute to the reasonable expenses of the mother's pregnancy and the child's birth, based on the father's ability to pay or contribute to those expenses.

(f) An order requiring either or both parties to pay or contribute to the costs of the guardian ad litem fees, genetic tests as provided in s. 767.48(5) and other costs.

(g) An order requiring either party to pay or contribute to the attorney fees of the other party.

Section 767.51(3) was renumbered as Wis. Stat. § 767.89 and amended, by 2005 Wis. Act 443, § 218 (effective January 1, 2007).

[7] *See* Wis. Stat. ch. 31, §§ 3,7,13 (1849).

609

The court of appeals noted that subsequent changes to the statute provided that a paternity action, previously referred to as an illegitimacy action or prosecution for bastardy, could be brought only by the district attorney.[8] *Id.,* ¶ 16.

¶ 19. In 1963, the legislature adopted Wis. Stat. § 52.21(2),[9] which authorized the court in a paternity action to make orders for the care, custody, support, and maintenance of a child. *Id.* Then, with the enactment of § 25, Chapter 352, Laws of 1979, the legislature listed the child, the mother, or a man presumed or alleged to be the father as persons authorized to bring a paternity action. *See* Wis. Stat. § 767.45(1) (1981–82). The enactment of Chapter 352, Laws of 1979 made orders in paternity actions similar to orders in divorce actions for the care, custody, and support of children. The court of appeals noted that the paternity statute at that time was placed within Wis. Stat. Chapter 767 (1981–82), entitled "Actions Affecting the Family." *Shannon E.T.,* 2006 WI App 104, ¶ 18.

¶ 20. The court of appeals noted that material in the legislative record shows that the changes brought about by Chapter 352, Laws of 1979 were intended to ensure that children of unmarried parents were given the same treatment as children of married parents who were no longer living together or who were divorced. *Id.*

¶ 21. Wisconsin Stat. § 767.45(1) (1985–86) was amended by 1987 Wis. Act 413, § 68, to state that the persons listed therein were authorized to bring a paternity "motion" as well as an "action." The introductory note to that Act stated that it is "in the interest of each

[8] *See* Wis. Stat. ch. 166 (1929).

[9] Wisconsin Stat. § 52.21(2) was created by § 2, ch. 426, Laws of 1963.

child to identify the child's father for reasons including medical information and financial support . . . it is the policy of this state to promote the interest of children in knowing the identity of both parents." 1987 Wis. Act 413, § 1.

¶ 22. The court of appeals noted that Wis. Stat. § 767.45(1) (1991–92) was again amended by 1993 Wis. Act 481, § 127, at which point the language "including an action or motion for declaratory judgment" was added. *Shannon E.T.,* 2006 WI App 104, ¶ 20. The same act also made a number of changes to other statutes that were intended to improve child support collection.[10]

¶ 23. From the legislative history of the paternity statute, the court of appeals determined that the statute served a number of policies and purposes. Those policies and purposes include: ensuring that mothers and other entities who incur expenses related to pregnancy, birth, and childcare have a procedure to determine paternity, so that the father contributes to those expenses; ensuring that unmarried fathers have a procedure for establishing paternity, so that they can participate in the child's parenting; giving courts the same authority as to orders regarding the care of children in their best interest as courts have in other actions affecting the family; and providing procedures, so that a child of unmarried parents can determine who his or her father is and obtain any related benefits. *Id.,* ¶ 21.

¶ 24. Based on its analysis of the paternity statute and its legislative history, the court of appeals held that

---

[10] *See* Fiscal Estimate of May 11, 1994, on Child Support Enforcement, prepared by DHSS, 1994 Spec. Sess. S.B. 2, located in the drafting records for 1993 Wis. Act 481, part 1, LRB-6036.

the legislature did not intend that a man should be able to bring a paternity action under Wis. Stat. Chapter 767 solely to determine paternity, for the purpose of bringing another action, such as the wrongful death action in the present case. *Id.*

¶ 25. The court of appeals asked for supplemental briefs addressing the question of how, if at all, Wis. Stat. § 885.23 related to the issue of whether Shannon may obtain a determination of paternity, in order to pursue a wrongful death action. Wisconsin Stat. § 885.23 provides:

> Genetic tests in civil actions. Whenever it is relevant in a civil action to determine the parentage or identity of any child, person or corpse, the court, by order, shall direct any party to the action and any person involved in the controversy to submit to one or more genetic tests as provided in s. 767.48.[11] The results of the tests shall be receivable as evidence in any case where exclusion from parentage is established or where a probability of parentage is shown to exist. Whenever the court orders the genetic tests and one of the parties refuses to submit to the tests that fact shall be disclosed upon trial.

(Footnote added.)

¶ 26. Shannon took the position that, although he might have the right to bring an action pursuant to Wis. Stat. § 885.23 to determine his parentage in the wrongful death action, he also has a right to bring a paternity action under Wis. Stat. § 767.45(1). Alicia argued that § 885.23 is irrelevant to the issue of whether Shannon may bring an action to determine the parentage of the stillborn. The court of appeals stated that it viewed

[11] Wisconsin Stat. § 767.48 was renumbered as Wis. Stat. § 767.84 pursuant to 2005 Wis. Act 443, §§ 210–212C, 249, 250 (effective January 1, 2007).

§ 885.23 as related to §§ 767.45–767.62, and disagreed with Alicia's assertion that § 885.23 is irrelevant to the present case. *Shannon E.T.*, 2006 WI App 104, ¶ 10. From the plain language of § 885.23, the court of appeals concluded that a paternity action under Wis. Stat. Chapter 767 is not the only action in which a determination of paternity may be made. *Id.*, ¶ 22.

¶ 27. The court of appeals construed Wis. Stat. § 885.23 to mean that the legislature did not intend that a separate action be initiated solely for the purpose of determining paternity, when paternity or parentage is relevant in another action. *Id.* The court of appeals then examined the legislative history of § 885.23. *Id.*, ¶ 23.

¶ 28. The court of appeals stated that procedures for determining paternity within a civil action, when paternity is relevant to that action, have existed since 1935. *Id.* In 1935, the legislature enacted § 1, Chapter 351, Laws of 1935, the predecessor to Wis. Stat. § 885.23. *Id.* The court noted that when the legislature enacted § 25, Chapter 352, Laws of 1979, it expanded the list of persons eligible to bring a paternity action pursuant to Wis. Stat. Chapter 767 (1981–82). *Id.* The court reasoned that, because procedures for determining parentage within a civil action existed prior to the enactment of § 25, Chapter 32, Laws of 1979, there is no reason to think that the legislature intended that Chapter 767 be the vehicle for bringing a separate paternity action, in those situations where parentage is a relevant issue in a civil action. *Id.*

¶ 29. The court of appeals, therefore, held that Wis. Stat. § 767.45(1) does not permit a man such as Shannon, who is alleging he is the father, to bring a paternity action for the sole purpose of establishing the paternity of a stillborn, so that he may then bring an

action for the stillborn's wrongful death. *Id.*, ¶ 24. The court of appeals thus affirmed the decision of the Monroe County Circuit Court.

¶ 30. Shannon proceeded to file a petition for review with this court, which we granted.

## II

¶ 31. Whether a complaint states a claim upon which relief may be granted is a question of law that we determine independently, but with the benefit of the analyses of the circuit court and the court of appeals. *Scott v. Savers Prop. & Cas. Ins. Co.,* 2003 WI 60, ¶ 6, 262 Wis. 2d 127, 663 N.W.2d 715. On a motion to dismiss, we take as true the allegations in the complaint and all reasonable inferences from those allegations. *Id.*, ¶ 5. Statutory interpretation presents an issue of law, which this court reviews de novo. *Maciolek v. MERS,* 2006 WI 10, ¶ 10, 288 Wis. 2d 62, 709 N.W.2d 360.

¶ 32. The paternity of a child is a factual issue for the trier of fact, such as a jury. *In re C.A.K.,* 159 Wis. 2d 224, 228, 464 N.W.2d 59 (Ct. App. 1990). *See also Suckow v. State,* 122 Wis. 156, 99 N.W.2d 440 (1904).

## III

¶ 33. Considering judicial economy, it makes sense that a determination of parentage under Wis. Stat. § 885.23, for the purpose of pursuing a wrongful death action on behalf of a stillborn, should be brought in the court where the wrongful death action is pending. When both the wrongful death action and the

614

determination of parentage are brought in the same court, the parties are more likely to obtain a swift resolution of the issues.

¶ 34. Wisconsin law clearly provides for a claim under Wis. Stat. § 895.03 for the wrongful death of a viable fetus that was stillborn. This court held in *Kwaterski,* 34 Wis. 2d at 22, that a viable fetus who receives injury that results in stillbirth is a "person" within the meaning of that term in the wrongful death statute, Wis. Stat. § 895.03 (1965), so as to give rise to a wrongful death action by the parents of the viable fetus that was stillborn. Furthermore, Wis. Stat. §§ 895.01(1) and (1)(a), which describe what causes of action survive, state that "[i]n addition to the causes of action that survive at common law," several other causes of action survive, including "[c]auses of action to determine paternity."

¶ 35. It is well-established under Wisconsin law, since *Kwaterski,*[12] that a parent may bring a wrongful death action on behalf of a viable fetus that was stillborn. A determination of parentage must be permit-

---

[12] In *Kwaterski v. State Farm Mutual Automobile Ins. Co.,* 34 Wis. 2d 14, 15, 22, 148 N.W.2d 107 (1967), we held that Wis. Stat. Chapter 895 (1967–68) applied to a viable fetus that was stillborn; therefore, we do not find it significant that Wis. Stat. § 895.01(1)(a) uses the word "paternity," rather than the word "parentage," as used in Wis. Stat. § 885.23.

The dissent's claim that our decision represents "a retreat from the clear decision in *Kwaterski*" (Dissent, ¶ 55), and that it creates "apprehension about the future of *Kwaterski*" (Dissent, ¶ 64) flies in the face of any fair reading of our opinion. Not only do we cite *Kwaterski* repeatedly, but we clearly rely on that case in reaching our holding in the case before us.

615

ted, where it is needed in order to proceed with the wrongful death action. Otherwise, the right to bring such a claim would, often, be rendered meaningless. However, the court of appeals correctly concluded that Wis. Stat. § 767.45(1) should not be used under the circumstances set forth herein to obtain a determination of paternity or parentage, in order to proceed with a wrongful death action.

¶ 36. Shannon argues that he should be permitted to establish paternity under Wis. Stat. §§ 885.23 or 767.45(1). Both the circuit court and the court of appeals held that, under the circumstances set forth, Shannon could not bring a paternity action pursuant to § 767.45(1). We agree. As the court of appeals noted, the policies and purposes behind the paternity provisions in §§ 767.45–767.62 relate to the care and support of a mother during pregnancy and the birth, care, and custody of a child. *See, e.g.,* Wis. Stat. §§ 767.46(2), 767.463, 767.51(3). *Shannon E.T.,* 2006 WI App 104, ¶ 21. None of the policies and purposes contemplate a parent's right to bring a paternity action for the sole purpose of then bringing a separate wrongful death action. *Id.*

¶ 37. We are satisfied that Wis. Stat. § 885.23 is the proper statute under which Shannon may proceed to attempt to obtain a determination of his parentage, for the purpose of continuing with his wrongful death action. In its decision, the Monroe County Circuit Court did not address § 885.23. We agree with the court of appeals, however, that § 885.23 is not irrelevant under these circumstances.

¶ 38. Although Wis. Stat. § 885.23 uses the word "parentage" rather than paternity, our case law indi-

cates that the two words are used interchangeably. *See, e.g., In re R.W.L.,* 116 Wis. 2d 150, 160, 341 N.W.2d 682 (1984) ("Paternity proceedings were designed to enable the child to establish parentage and to protect the child's financial well-being."); *In re J.M.K.,* 160 Wis. 2d 429, 431, 465 N.W.2d 833 (Ct. App. 1991) ("Because two different sets of blood tests with conflicting statistical results as to the probability of parentage were presented at trial, we hold that the . . . presumption of paternity is inapplicable . . . .").

¶ 39. On points where statutory language is plain, we apply the statutory language without resorting to extrinsic materials to determine legislative intent. *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110. The language of Wis. Stat. § 885.23 plainly states that a court may order genetic tests "[w]henever it is relevant in a civil action to determine the parentage or identity of any child, person or corpse. . . ." A determination of parentage is relevant in Shannon's civil action for the wrongful death of C.A.V.M. We, therefore, hold that the proper vehicle for determining parentage, under the facts and circumstances herein, is § 885.23, which allows for a determination of Shannon's parentage of C.A.V.M. within the pending wrongful death action.

¶ 40. Determination of parentage is a factual issue. *In re C.A.K.,* 159 Wis. 2d at 228. Genetic testing is not the sole type of evidence available for determination of parentage. Wisconsin Stat. § 767.87 (2005–06), as created by 2005 Wis. Act 443, §§ 207, 258 (effective January 1, 2007), lists genetic test results under Wis. Stat. § 885.23 as one of several different types of evidence that may be presented in a hearing on paternity. Section 767.87 states:

617

(1) Generally. Evidence relating to paternity, whether given at the trial or the pretrial hearing, may include, but is not limited to:

(a) Evidence of sexual intercourse between the mother and alleged father at any possible time of conception or evidence of a relationship between the mother and alleged father at any time.

(b) An expert's opinion concerning the statistical probability of the alleged father's paternity based upon the duration of the mother's pregnancy.

(c) Genetic test results under s. 49.225, 767.84, or 885.23.

(cm) Genetic test results under s. 48.299(6)(e) or 938.299(6)(e).

(d) The statistical probability of the alleged father's paternity based upon the genetic tests.

(e) Medical, scientific or genetic evidence relating to the alleged father's paternity of the child based on tests performed by experts.

(f) All other evidence relevant to the issue of paternity of the child, except as provided in subs. (2), (2m) and (3).

¶ 41. In the present case, genetic testing may not be practical or possible. A jury (or the court as finder of fact) may, therefore, need to consider other evidence in order to make a determination of parentage in accord with Wis. Stat. § 885.23. Shannon's Petition for Paternity Determination alleged several facts that appear to be relevant to determining whether he is the father of C.A.V.M. Shannon alleged that he had sexual relations with Alicia resulting in the pregnancy, that he resided with Alicia during periods of time during her preg-

nancy, that he assisted with Alicia's prenatal care, that Alicia has never disputed that Shannon is the father of C.A.V.M., and that C.A.V.M.'s birth announcement lists Shannon as the father. Wisconsin Stat. § 767.87 makes it clear that genetic testing under § 885.23 is only one of several types of evidence that may be presented in a hearing on paternity. The facts alleged in Shannon's Petition for Paternity Determination, and other facts as well, may be relevant, if admissible, to a determination of parentage in this case. Section 885.23 is the proper vehicle for such a determination. The determination of parentage in relation to Shannon's wrongful death action under § 885.23 properly belongs in the Wood County Circuit Court, where the wrongful death action is pending.

## IV

¶ 42. In the petition for review, we are asked to answer the question of whether Shannon, as an unmarried man alleging himself to be the father of a stillborn, may bring a paternity action under Wis. Stat. § 767.45(1) to establish paternity for purposes of bringing a claim for the wrongful death of a viable fetus that was stillborn. We answer this question in the negative. However, we hold that, under such circumstances, Shannon, who is alleging that he is the father, may bring a motion under Wis. Stat. § 885.23 to determine his parentage in the pending wrongful death action.

¶ 43. The decision of the court of appeals is affirmed, but on the grounds set forth herein.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 44. DAVID T. PROSSER, J. (*dissenting*). Shannon E.T. seeks to establish his paternity of a stillborn

child in order to bring an action for the alleged wrongful death of the child. This court permits Shannon to use Wis. Stat. § 885.23 to support his claim, but it precludes him from using Wis. Stat. § 767.45 for this purpose.

¶ 45. I agree with the court's decision to permit Shannon to establish paternity, but I disagree with the court's analysis and its affirmance of the court of appeals.

## I

¶ 46. Wisconsin Stat. §§ 895.03 and 895.04 provide for wrongful death actions in Wisconsin. In 1967 this court interpreted Wis. Stat. § 331.03 (1963) (now § 895.03) to determine that a "viable unborn child, whose later stillbirth" was caused by a wrongful act, was a "person" within the meaning of the statute, so as to give rise to a wrongful death action "by the parents of the stillborn infant." *Kwaterski v. State Farm Mut. Auto. Ins. Co.,* 34 Wis. 2d 14, 15, 148 N.W.2d 107 (1967).

¶ 47. In *Kwaterski,* the unborn child's parents were married. *Id.* at 15. As a result, the eligibility of the two parents to make a wrongful death claim was not at issue. But if the parents had not been married, some party might have challenged the eligibility or standing of the alleged father, and a determination of the man's paternity would have been necessary as part of the wrongful death suit.

¶ 48. In the present case, the court permits Shannon to use Wis. Stat. § 885.23 to support his claim ("[W]e hold that, under such circumstances, Shannon . . . may bring a motion under Wis. Stat. § 885.23 to determine his parentage in the pending wrongful death action.") Majority op., ¶ 4.

¶ 49. This decision is suspect. Wisconsin Stat. § 885.23 authorizes genetic tests in a civil action (like a wrongful death or probate action) to determine the

parentage or identity of "any child, person or corpse," whenever such evidence is relevant.[1] This statute grants a party the right to obtain a genetic test, governs admissibility of the test results, and states the consequence of a party's refusal to submit to a test. By its terms, however, § 885.23 does not help a party who is *not* seeking to obtain a genetic test, which is likely to be the situation here.

¶ 50. Nothing in § 885.23 provides an independent basis for a party to establish paternity. The section speaks of genetic tests as evidence in an already initiated civil action in which parentage is an issue. It does not suggest that parentage may not be established by testimony or other evidence—in the absence of a genetic test—but the section does not itself authorize a party to initiate a proceeding to prove paternity or to present other kinds of evidence to prove paternity. In sum, the majority's reliance on § 885.23 as the statutory basis for a party to establish paternity is shaky at best.

## II

¶ 51. If the court were determined to bar recovery by an unmarried father for the wrongful death of an unborn child, I could understand a strategy in which

---

[1] Wisconsin Stat. § 885.23 reads:

> Genetic tests in civil actions. Whenever it is relevant in a civil action to determine the parentage or identity of any child, person or corpse, the court, by order, shall direct any party to the action and any person involved in the controversy to submit to one or more genetic tests as provided in s. 767.84. The results of the tests shall be receivable as evidence in any case where exclusion from parentage is established or where a probability of parentage is shown to exist. Whenever the court orders the genetic tests and one of the parties refuses to submit to the tests that fact shall be disclosed upon trial.

the court would exclude every possible means for the father to establish paternity. But that does not appear to be the goal of the majority opinion. Thus, it is hard to fathom why the court spends many pages trying to show that a man "alleging himself to be the father of the child" cannot bring a motion under § 767.45(1) "for the purpose of determining the paternity of the child." Wis. Stat. § 767.45(1) (2003–04). The language in § 767.45(1) is clearly broad enough to cover the facts of the case.[2]

¶ 52. In addition, § 767.45(3) provides:

> If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except that service of process, service and filing of pleadings, the first appearance and the taking of depositions to preserve testimony may be done before the birth of the child.

Wis. Stat. § 767.45(3). This subsection specifically approves the filing of an action before an unborn child is

---

[2] Wisconsin Stat. § 767.45(1) provides in relevant part:

*The following persons may bring an action or motion,* including an action or motion for declaratory judgment, *for the purpose of determining the paternity of a child* or for the purpose of rebutting the presumption of paternity under s. 891.405 or 891.41(1):

(a) The child.

(b) The child's natural mother.

(c) Unless s. 767.62(1) applies, a man presumed to be the child's father under s. 891.405 or 891.41(1).

(d) *A man alleged or alleging himself to be the father of the child.* (Emphasis added.)

Wisconsin Stat. § 767.45 was converted by 2005 Wis. Act 443 to Wis. Stat. § 767.80 as part of a comprehensive revision of chapter 767, effective January 1, 2007.

born. Under other law, if the unborn child dies, the cause of action to determine paternity survives the death. *See* Wis. Stat. § 895.01(1)(a).

¶ 53. Wisconsin Stat. § 767.51(3) does, of course, state that a judgment or order determining paternity *shall* contain certain provisions. But there need not be a "judgment or order" of paternity in the course of another proceeding such as a wrongful death action, only a determination of fact. *Cf. Max T. v. Carol O.,* 174 Wis. 2d 352, 497 N.W.2d 740 (Ct. App. 1993). In a jury trial, the court could instruct the jury or provide a special verdict with the question of parentage answered by the court. If a judgment or order were absolutely necessary, the world would not end if the court simply stated in the judgment or order that the provisions of § 767.51(3) are inapplicable because the child was still-born.

### III

¶ 54. Inasmuch as Shannon is given permission to establish his "parentage" of the stillborn child, it might appear frivolous to quibble over which statute he is entitled to use. But the court's decision has implications for the future.

¶ 55. First, this case appears to represent a retreat from the clear decision in *Kwaterski.* In 1967 this court said:

> We recognize that up to 1949 no American jurisdiction permitted wrongful-death proceedings for a stillborn infant. In that year, the Minnesota court first permitted such a suit in *Verkennes v. Corniea*[, 38 N.W.2d 838 (Mn. 1949)]. Since the *Verkennes* opinion, ten jurisdictions have expressly permitted suits on facts precisely equivalent to the case at bar.

*Kwaterski,* 34 Wis. 2d at 18.[3] The unanimous court went on to assert that there were at least four basic reasons to support recovery:

(1) A viable child is capable of independent existence and therefore should be recognized as a separate entity entitled to the protection of the law of torts. In *Puhl* [*v. Milwaukee Automobile Insurance Co.,* 8 Wis. 2d 343, 99 N.W.2d 163 (1959)] we have already recognized that an unborn child is a separate legal entity.

(2) As stated in *Puhl,* the law recognizes an unborn child by protecting its property rights and rights of inheritance and also protects the unborn child against the crimes of others.

(3) If no right of action is allowed, there is a wrong inflicted for which there is no remedy. Denying a right of action for negligent acts which produce a stillbirth leads to some very incongruous results. . . . [A]n un-

---

[3] The court cited *State v. Sherman,* 198 A.2d 71 (Md. 1964); *Fowler v. Woodward,* 138 S.E.2d 412 (S.C. 1964); *Gorke v. Le Clerc,* 181 A.2d 448 (Conn. 1962); *Hale v. Manion,* 368 P.2d 1 (Kan. 1962); *Stidam v. Ashmore,* 167 N.E.2d 106 (Ohio Ct. App. 1959); *Poliquin v. MacDonald,* 135 A.2d 249 (N.H. 1957); *Worgan v. Greggo & Ferrara, Inc.,* 128 A.2d 557 (Del. 1956); *Mitchell v. Cough,* 285 S.W.2d 901 (Ky. 1955); *Rainey v. Horn,* 72 So.2d 434 (Miss. 1954); *Valence v. La. Power & Light Co.,* 50 So.2d 847 (La. Ct. App. 1951). *See Kwaterski v. State Farm Mut. Auto. Ins. Co.,* 34 Wis. 2d 14, 18–19, 148 N.W.2d 107 (1967).

In 1995 the West Virginia Supreme Court of Appeals determined that the term "person" used in wrongful death statutes encompasses a *nonviable* unborn child. *Farley v. Sartin,* 466 S.E.2d 522 (W.Va. 1995). The court cited one decision prior to *Verkennes v. Corniea,* 38 N.W.2d 838 (Mn. 1949), namely, *Bonbrest v. Kotz,* 65 F. Supp. 138 (D.C. Cir. 1946), and collected multiple additional cases after *Kwaterski.*

born child who was badly injured by the tortious acts of another, but who was born alive, could recover while an unborn child, who was more severely injured and died as the result of the tortious acts of another, could recover nothing.

(4) A family who loses a child before it is born suffers a very grievous loss for which money damages are really inadequate. It is only equitable that a family should receive some compensation from a tort-feasor whose negligence caused the loss of a child.

*Kwaterski,* 34 Wis. 2d at 19–20.

¶ 56. Six years after *Kwaterski,* the United States Supreme Court held that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." *Roe v. Wade,* 410 U.S. 113, 158 (1973). Although this part of the *Roe* decision was not unexpected, the Court went on unnecessarily to criticize decisions like *Kwaterski:*

In a recent development, generally opposed by the commentators, some States permit the parents of a stillborn child to maintain an action for wrongful death because of prenatal injuries. Such an action, however, would appear to be one to vindicate the parents' interest and is thus consistent with the view that the fetus, at most, represents only the potentiality of life. . . . In short, the unborn have never been recognized in the law as persons in the whole sense.

*Roe,* 410 U.S. at 162.

¶ 57. Ten years ago in *State ex rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 561 N.W.2d 729 (1997), this court concluded that the legislature did not intend to include a fetus within the Children's Code definition of "child," and thus a circuit court lacked jurisdiction to

confine a pregnant, drug-consuming mother so that the court could protect the fetus. *Id.* at 137–38.

¶ 58. In the present case, the circuit court cited *Angela M.W.* as one reason for denying Shannon the right to proceed under Wis. Stat. § 767.45. The court of appeals discussed both § 767.45 and Wis. Stat. § 885.23 and denied Shannon the right to proceed under § 767.45 and avoided making a clear determination under § 885.23.

¶ 59. What is obvious is that our courts are reluctant to interpret the word "child" in Wis. Stat. § 767.45(1) to include a "stillborn infant." *See Kwaterski,* 34 Wis. 2d at 15. This timidity is not justified and comes very close to repudiating *Kwaterski,* which has been part of Wisconsin law for four decades.

¶ 60. Second, in relying entirely on Wis. Stat. § 885.23 as the statute under which to proceed, the court is needlessly confusing litigants. Once again, this statute by its terms does not provide a separate vehicle for establishing paternity.

¶ 61. Wisconsin Stat. § 767.45(1) was created by § 25, Chapter 352, Laws of 1979, which took effect July 1, 1981. Section 767.45(1) substantially increased the number of persons authorized to establish paternity and should, therefore, be viewed as codifying broad authority to effect this objective.

¶ 62. Now, however, when the court precludes the use of the broadly worded Wis. Stat. § 767.45, it undermines the use of anything in Chapter 767 to establish paternity on these facts. This is very troublesome because the statute the court ultimately relies on, Wis. Stat. § 885.23, is (1) explicitly linked to Chapter 767; and (2) applies *only* to genetic tests. In other words, the court relies on a statute that was designed to facilitate one means of proving paternity, not authorize that end.

626

It relies on a statute that will be viewed as inapplicable when a litigant seeks to prove paternity by some means different from a genetic test.

¶ 63. If the court is determined to preclude the use of Wis. Stat. § 767.45 to establish the paternity of a stillborn child, it ought to give litigants a clear explanation of how to establish paternity in a case where the litigant is not seeking a genetic test. I would rely on Wis. Stat. § 806.04 as supplementary authority for an independent action and Wis. Stat. § (Rule) 904.02 as the controlling evidentiary rule.

¶ 64. Because I see the court's decision as creating apprehension about the future of *Kwaterski,* as well as uncertainty and confusion, I respectfully dissent.