In re the Paternity of T. J. D. C.:

State of Wisconsin, Petitioner-Respondent,

v.

Robin M. W., Respondent,

John D. C., Respondent-Appellant.†

Court of Appeals

*No. 2007AP1181. Submitted on briefs January 31, 2008.
—Decided March 18, 2008.*

2008 WI App 60

(Also reported in 750 N.W.2d 957.)

† Petition to review filed denied, w/o costs 6/10/08.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jessica Roulette, Jennafer Dorfman Wagner* and *DeAngela M. Ellis* of *Legal Action of Wisconsin, Inc.* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Kristela L. Cervera* of *Milwaukee County Department of Child Support Enforcement* of Milwaukee.

Before Curley, P.J., Wedemeyer and Fine, JJ.

¶ 1. WEDEMEYER, J. John D.C. appeals from an order affirming the paternity judgment and denying his

motion seeking to dismiss the State's paternity action. John asserts that: (1) a paternity action cannot be brought based on the circumstances in this case; (2) the paternity judgment is incomplete as it does not contain orders regarding legal custody, physical placement and child support; and (3) the paternity action should have been dismissed in that the action was contrary to the best interests of the minor child. Because we resolve each of John's assertions in favor of upholding the order, we affirm.

## BACKGROUND

¶ 2. Tekyah J.D.C. was born on June 4, 1993, to Robin M.W. No father's name was listed on the birth certificate. At the time of Tekyah's birth, Robin maintained a relationship with John. On March 15, 1996, Robin and John were married. Some time subsequent to the marriage, the two separated, although no action for divorce has been commenced by either party.

¶ 3. In March 2006, Robin had applied for and was receiving assistance from the State of Wisconsin in the form of food share, medical assistance and child care assistance. Pursuant to WIS. STAT. § 767.80(6m) (2005–06),[1] the State contacted Robin to initiate paternity proceedings as no father's name was listed on Tekyah's birth certificate. Robin identified John as Tekyah's biological father, but advised that she did not know of his whereabouts and she was not interested in filing an "Acknowledgement of Marital Child" form. The form, which would require John's signature, would have sufficed to establish paternity of Tekyah.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

789

¶ 4. As a result, the State filed an action to establish paternity. Although the first action was dismissed for failure to properly serve John, the State succeeded in locating and serving John in a second paternity action. At a hearing before an assistant family court commissioner on August 15, 2005, both Robin and John appeared in court and acknowledged that John was Tekyah's father. Both waived their rights to genetic testing. John moved to dismiss the paternity action, but his motion was denied. Judgment was entered declaring John as the biological father of Tekyah. No other orders were made regarding custody, placement, or support due to the fact that the parties were still married. The commissioner also ruled on issues related to health insurance, reimbursement of birth expenses to the State, and past support and court costs.

¶ 5. In September 2006, John filed his notice of motion seeking independent review by the trial court, and requesting that the paternity action be dismissed because the parties were still married. He argued that the paternity action could not proceed because the parties' marriage triggered the presumption that Tekyah was a marital child, pursuant to WIS. STAT. §§ 767.803 and 891.41(1). The trial court entered an order denying the motion and affirming the judgment and orders of the court commissioner. John now appeals.

## ANALYSIS

*A. Paternity Order was proper under the circumstances of the case.*

¶ 6. The issue in this case is whether a paternity action is proper under the particular facts and circum-

790

stances of this case. Tekyah was born before Robin and John got married. After the marriage, Robin and John separated, but never divorced. Due to the fact that no father's name was listed on Tekyah's birth certificate, the State sought to establish the legal father. Although Robin provided the State with the father's name, she declined to pursue the Acknowledgement of Marital Child form. Accordingly, based on the foregoing, and pursuant to WIS. STAT. § 767.80(1), the State initiated this paternity action. John argues that a paternity action cannot be brought to confirm the marital presumption of paternity relative to WIS. STAT. § 891.41(1)(b).

■■■

¶ 7. The issue in this case involves the interpretation of statutes based on undisputed facts. Thus, we are presented with legal issues, which we review independently. *Rusk County DHHS v. Thorson*, 2005 WI App 37, ¶ 4, 278 Wis. 2d 638, 693 N.W.2d 318. As a part of that interpretation, we will apply the plain meaning of the words in the statute. *Id.*

¶ 8. There are a couple of statutes at play here. John argues that WIS. STAT. § 891.41(1) applies and requires a ruling that the paternity action does not lie. Section 891.41(1) provides in pertinent part:

**(1)** A man is presumed to be the natural father of a child if any of the following applies:

. . . .

(b) He and the child's natural mother were married to each other after the child was born but he and the child's natural mother had a relationship with one another during the period of time within which the child was conceived and no other man has been adjudicated to be the father or presumed to be the father of the child under par. (a).

791

The State acknowledges the application of this statute, but contends that John and Robin's failure to complete the Acknowledgement of a Marital Child form, resulted in another statute requiring the State to file the paternity action. WISCONSIN STAT. § 767.80(1)(h) & (6m) provide in pertinent part:

> **Determination of paternity. (1)** WHO MAY BRING ACTION OR FILE MOTION. The following persons may bring an action or file a motion, including an action or motion for declaratory judgment, for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.405 or 891.41(1):
>
> . . . .
>
> (h) This state as provided under sub. (6m).
>
> . . . .
>
> **(6m)** WHEN ACTION MUST BE COMMENCED. The attorney designated under sub. (6)(a) shall commence an action under this section on behalf of the state within 6 months after receiving notification under s. 69.03(15) that no father is named on the birth certificate of a child who is a resident of the county if paternity has not been acknowledged under s. 767.805(1) or a substantially similar law of another state or adjudicated, except in situations under s. 69.14(1)(g) [birth by artificial insemination] and (h) [surrogate mother] and as provided by the department by rule.

¶ 9. We agree with the State's interpretation. WISCONSIN STAT. § 767.80(1) utilizes mandatory language requiring the State to initiate a paternity action under the facts and circumstances of this case. No father's name was listed on Tekyah's birth certificate. Thus, according to the clear language of this statute, the State

was obligated to commence a paternity action. The State attempted to have paternity acknowledged by taking the less formal action of requesting that the Acknowledgment of a Marital Child form be completed and filed. Its attempts failed. Accordingly, it was obligated, by statute, to file the paternity action.

¶ 10. John argues that the paternity action should have been dismissed because based on Wis. Stat. § 891.41(1), he was the *presumed* father of Tekyah. No one disputes that the presumption of paternity under that statute existed based on the fact that he married Robin, and the two had a relationship during the conceptive time period. However, as the State asserts, a *presumption* of paternity does not alleviate it of its obligations under Wis. Stat. § 767.80(1). The presumption of paternity does not put John's name on Tekyah's birth certificate, nor does the presumption alone act as an adjudication of paternity under the circumstances presented here.

¶ 11. The presumption of paternity permitted John and Robin to file the Acknowledgment of a Marital Child form, which would have served as a conclusive determination of paternity. If John and Robin had filed the Acknowledgment of a Marital Child form, the State would have been barred from filing this paternity action. John and Robin, however, declined to file the form acknowledging paternity.

¶ 12. Based on the foregoing, we conclude that our interpretation is the only reasonable interpretation and operates to harmonize these statutes. *See Brunette v. Bierke*, 271 Wis. 190, 196, 72 N.W.2d 702 (1955) ("we must, if it is possible to do so, harmonize and reconcile" any seemingly conflicting statutes, and "avoid a con-

struction which creates an inconsistency if a reasonable interpretation can be adopted . . .").

*B. Paternity Order complied with requirements of statute.*

¶ 13. We are further not persuaded by John's assertions that the paternity adjudication is infirm because the trial court's order did not include instructions as to custody or placement. The paternity order in this case did not address custody or placement because custody and placement were not an issue in this case. The parents here are still married, albeit separated. No divorce action has been commenced. Thus, the trial court did not need to issue orders on placement or custody. *See Shannon E.T. v. Alicia M.V.M.*, 2007 WI 29, ¶ 17, 299 Wis. 2d 601, 728 N.W.2d 636 (statute requires paternity order to include statutory items referenced, but need not include the items not necessary to the particular facts of the case). Further, the record reflects that the trial court did not overlook the issues of custody or placement, but specifically stated that "no order" needed to be made on these issues due to the parties' marital status.

*C. Best Interests of the Child.*

¶ 14. John's final claim is that a paternity action under the circumstances here, where the parties do not dispute that Tekyah should be afforded the marital child presumption of WIS. STAT. § 891.41(1), is contrary to Tekyah's best interests. He argues that no other man has alleged to be Tekyah's father, that he has acted as her father since she was born, and that it would be

794

devastating to Tekyah if the paternity action resulted in a finding that John was not Tekyah's biological father. We are not persuaded by John's contentions.

¶ 15. There is nothing in the record before us to suggest that the paternity action initiated here was not in the best interests of Tekyah. There was no dispute that John was Tekyah's father. The action was started to make sure that a legal determination existed establishing that fact. The intent of the statutes is to afford a child in Tekyah's situation the same "rights and privileges of a marital child as if he or she had been born during the marriage of the parents." WIS. STAT. § 767.803. This statute states that a nonmarital child, whose parents subsequently marry, is entitled to have their birth certificate changed to include the name of the parents, pursuant to WIS. STAT. § 69.15(3)(b). Section 69.15(3)(b)1 requires the state registrar, *upon receipt of the acknowledgement of marital child form signed by both parents:* "to insert the name of the husband from the marriage certificate as the father if the name of the father was omitted on the original birth certificate."

¶ 16. The problem, in the instant case, is that John and Robin failed to fill out and file the Acknowledgement of a Marital Child form. Thus, Tekyah's birth certificate did not contain John's name. No father's name was listed on Tekyah's birth certificate, and thus the State was required by WIS. STAT. § 767.80(6m) to file this paternity action. By following the statutory requirement, the State was promoting the best interests of the child by ensuring that John was legally declared to be Tekyah's father. Accordingly, we affirm the order of the trial court.

*By the Court.*—Order affirmed.